UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

UNITED STATES OF AMERICA

- against -

TYRONE ROBINSON,

Defendant.
-----------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
16-cr-545-ADS-AYS-1

APPEARANCES:

**United States Attorney's Office for the Eastern District of New York**
610 Federal Plaza
Central Islip, NY 11722
      By:    Allen Lee Bode, Assistant United States Attorney

**Law Office of Kevin J. Keating**
*Attorney for the Defendant*
666 Old Country Road
Garden City, NY 11530
      By:    Kevin James Keating, Esq., of Counsel

**SPATT, District Judge:**

On March 15, 2017, the Defendant Tyrone Robinson (the "Defendant") was charged in a superseding indictment with thirty-two counts relating to nine gunpoint robberies and attempted robberies that occurred in Nassau County, as well as accompanying conspiracy and firearm charges.

Presently before the Court are several motions by the Defendant: to dismiss the alleged violations of 18 U.S.C. § 924(c) for failure to state a claim; to suppress statements made by the Defendant during a videotaped interrogation; to sever or bifurcate the counts alleging violation of 18 U.S.C. § 922(g) from the other counts; to compel election between multiplicitous conspiracy counts; to suppress a police officer identification; to suppress evidence recovered from the Defendant's residence by NYS parole officers pursuant to a parole arrest warrant on June 10, 2016;

1

and to suppress all evidence recovered pursuant to the execution of a search warrant on July 8, 2016.

For the following reasons, the Court grants the Defendant's motion to bifurcate the felon-in-possession counts from the other counts; as well as his motion for a suppression hearing regarding the seizure of his cellular phone during the execution of the parole arrest warrant on June 10, 2016. The Defendant's remaining motions are denied.

# I. BACKGROUND

## A. Procedural Background

On October 9, 2016, the Government filed a complaint against the Defendant charging the Defendant with alleged violations of 18 U.S.C. § 1951(a), Hobbs Act robbery, and 18 U.S.C. § 924(c), use of a firearm in furtherance of a crime of violence.

On January 11, 2017, the Government filed a 22-count indictment against the Defendant.

On March 15, 2017, the Government filed a 32-count superseding indictment charging the Defendant with multiple counts of Hobbs Act robbery, Hobbs Act attempted robbery, and Hobbs Act robbery conspiracy, 18 U.S.C. §§ 1951(a), 2 and 3551 *et seq.*; brandishing one or more firearms during crimes of violence, 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 2 and 3551 *et seq.*; possession of a firearm by a felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 3551 *et seq.*; discharging one or more firearms during crimes of violence, 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(c)(1)(C)(i), 2 and 3551 *et seq.*; firearm-related murder, 18 U.S.C. §§ 924(j)(1), 2 and 3551 *et seq.*; and possession of ammunition by a felon, 18 U.S.C. §§ 922(g)(1), 924(A)(2) and 3551 *et seq.*.

On May 8, 2017, the Defendant filed the instant motions, and he supplemented his motions on September 22, 2017.

**B. The Relevant Facts**

The indictment alleges that the Defendant was involved in numerous home invasions, and that he possessed a firearm on a number of occasions. As not all facts are relevant to the instant motions, the Court will state the relevant facts when they are necessary to the determination of the specific motion.

## II. DISCUSSION

**A. As to the Defendant's Motion to Dismiss the Alleged Violations of 18 U.S.C. § 924(c)**

The Defendant contends that all alleged violations of 18 U.S.C. §924(c) ("Section 924(c)") must be dismissed because Hobbs Act robbery does not qualify as a crime of violence under Section 924(c). The Court finds that the Second Circuit has explicitly ruled that Hobbs Act robbery is a crime of violence as defined in Section 924(c), and that the Court is therefore constrained to follow that precedent.

Section 924(c)(1)(A) provides, in pertinent part:

[A]ny person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .
    (i) be sentenced to a term of imprisonment of not less than 5 years;
    (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
    (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c). A "crime of violence" is defined as:

[A]n offense that is a felony and--
        (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
        (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* at § 924(c)(3)(A)–(B).

The superseding indictment indicates that the crime(s) of violence which form the basis of the Defendant's alleged Section 924(c) violations are the numerous robberies and attempted robberies committed in violation of 18 U.S.C. § 1951(a).

Section 1951(a) states that:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a). The same section defines robbery as:

> [T]he unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining . . . .

Id. at § 1951(b).

As the Defendant admits, the Second Circuit ruled in *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016) that "Hobbs Act robbery 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another,'" *id.* at 144 (quoting 18 U.S.C. § 924(c)(3)(A), and therefore qualifies as a crime of violence under that statute. The Circuit further stated that "[e]ven if Hobbs Act robbery did not qualify as a crime of violence pursuant to § 924(c)(3)(A), such a robbery unequivocally qualifies as a crime of violence pursuant to § 924(c)(3)(B) because it, 'by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" *Id.* at 145 (quoting 18 U.S.C. § 924(c)(3)(B). The *Hill* Court explicitly rejected many of the arguments raised

by the Defendant here, including that the "substantial risk of force" clause contained in Section 924(c)(3)(B) is void for vagueness in light of *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 ("*Johnson II*") (2015). In *Johnson II*, the Supreme Court found that the residual clause of the Armed Career Criminal Act violated the Constitution's guarantees of due process by being unconstitutionally vague.

As to the defendant's argument in *Hill* that Section 924(c)(3)(B) should also be held unconstitutionally vague, the Second Circuit stated that:

> [T]he Supreme Court's explanation for its conclusion in *Johnson II* renders that case inapplicable to the risk-of-force clause at issue here. Section 924(c)(3)(B) does not involve the double-layered uncertainty present in *Johnson II*. . . . Assessing whether a felony, by its nature, poses a substantial risk that "physical force against the person or property of another may be used in the course of committing the offense," § 924(c)(3)(B), however, is a far narrower and simpler undertaking than divining whether a felony, not being one of four enumerated, but disparate crimes, "otherwise involves conduct that presents a serious potential risk of physical injury to another," § 924(e)(2)(B)(ii).

*Hill*, 832 F.3d at 146; *see also Diaz v. United States*, No. 14-CR-442 (JMF), 2017 WL 112609, at *2 (S.D.N.Y. Jan. 11, 2017) (stating that "the 'risk-of-force clause'" in Section 924(c)(3)(B) "remains constitutional despite the Supreme Court's decision in [*Johnson II*] (citing *Hill*, 832 F.3d at 146)); *United States v. Conyers*, No. S13 15-CR-537 (VEC), 2016 WL 7189850, at *4 (S.D.N.Y. Dec. 9, 2016) ("[T]he Second Circuit has held that Hobbs Act Robbery is a crime of violence under Section 924(c)." (citing *Hill*, 832 F.3d at 137)); *United States v. Biba*, 219 F. Supp. 3d 347, 354 (E.D.N.Y. 2016) (denying defendant's motion on similar grounds by following Hill, and finding that "a conspiracy to commit Hobbs Act robbery is a crime of violence").

This Court is bound by the Second Circuit's decision in *Hill*, unless and until the Second Circuit or the United States Supreme Court overrules it.

Therefore, the Court finds that Hobbs Act robbery constitutes a crime of violence under Sections 924(c)(3)(A) and 924(c)(3)(B).  Accordingly, the Defendant's motion to dismiss those counts is denied.

### B.  As to the Defendant's Motion to Suppress Videotaped Statements

The Defendant moves to suppress videotaped statements that he made to an agent of the Bureau of Alcohol, Tobacco, and Firearms (the "ATF"), because he argues that his Miranda waiver was not knowing, intelligent, and voluntary.  The Government states that that it "does not intend to introduce [the Defendant's] statements . . . in its case-in-chief," but that it "reserve[s] the right to use the statements to impeach [the Defendant] if he takes the witness stand."  (Gov't Omnibus Resp. to Def.'s Mots. (ECF No. 69) ("Gov't Opp.") at 10).

Accordingly, the Defendant's motion to suppress the videotaped statements is denied as moot.  *See United States v. Mouzon*, No. 16 CR 284 (CM), 2016 WL 7188150, at *1 (S.D.N.Y. Dec. 2, 2016) ("[T]he Government says that it 'does not intend to use the defendant's statements in its case-in-chief.'  Accordingly, defendant's motion to suppress his statements is moot . . . ."); *United States v. Jackson*, 548 F. Supp. 2d 24, 26 (W.D.N.Y. 2008) (same).

### C.  As to the Defendant's Motion to Sever or Bifurcate the Felon In Possession Counts

The Defendant moves to sever the counts alleging possession of a firearm by a felon ("felon-in-possession" or "FIP") on the basis that they are improperly joined, and that severance is necessary to avoid undue prejudice.  In the alternative, the Defendant asks the Court to bifurcate the felon-in-possession counts from the other counts.  In opposition, the Government argues that the counts are properly joined, and that since the Government consents to bifurcation that any prejudice is removed.  The Court finds that the felon-in-possession counts are properly joined, and orders them bifurcated to prevent any prejudice to the Defendant.

Rule 8(a) of the Federal Rules of Criminal Procedure provides for the joinder of offenses when they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). "Joinder is proper where the same evidence may be used to prove each count," *United States v. Blakney,* 941 F.2d 114, 116 (2d Cir. 1991), or if the counts have a "sufficient logical connection," *United States v. Ruiz,* 894 F.2d 501, 505 (2d Cir. 1990).

Here, the Court finds that the counts were properly joined. The Government represents that there are numerous factual links between the felon in possession counts and the other counts. Specifically, the Government states that:

- The gun recovered on June 8, 2016 fired the bullet recovered from the leg of [one of the victims][.]
- .45 caliber PMC shell casings recovered in the December 17, 2015 robbery and the May 3, 2016 robbery/murder were fired from the same gun and these rounds match the ammunition illegally sold to [the Defendant] by a co-conspirator along with the gun recovered on September 5, 2015.
- A box of .45 caliber PMC ammunition (the same brand as the shells in the December 17, 2015 robbery and the May 3, 2016 robbery/murder) was found in the safe on [the Defendant's] roof on April 17, 2016, along with three other handguns.
- The .22 caliber shell recovered from [the Defendant's] residence matches the caliber of one of the guns and ammunition recovered from the safe.

(Gov't Opp. at 15).

Based on the government's representation of the evidence to be offered at trial, there appears to be a connection between the felon-in-possession of a firearm charges and the charges relating to the alleged robberies.

Furthermore, even without these factual connections, the Government would be permitted to introduce evidence supporting the felon-in-possession counts during a trial of the other counts to show intent, knowledge, opportunity, or lack of mistake. That is, at a separate trial for the counts related to the robbery, the Government would be able to introduce into evidence the guns and

ammunition allegedly recovered from the Defendant that form the basis for the felon-in-possession counts. *See United States v. Blake*, 195 F. Supp. 3d 605, 612 (S.D.N.Y. 2016) ("Here, although evidence related to Counts Four and Five is clearly inadmissible for the purpose of showing propensity to commit the offense charged in Counts One, Two, and Three, such evidence would be admissible in separate trials for other purposes, such as to prove intent, knowledge, or absence of mistake." (internal citation omitted); *United States v. Khandakar*, 955 F. Supp. 2d 268, 271–72 (S.D.N.Y.2013) (finding no substantial prejudice resulting from joined counts because "the counts are connected, and because the evidence would be admissible [under Rule 404(b)] at separate trials.")). The fact that the Defendant had guns is also relevant to the conspiracy counts. *See United States v. Pitre,* 960 F.2d 1112, 1119 (2d Cir. 1992) ("Prior act evidence may be admitted to inform the jury of the background of the conspiracy charged . . . .").

Similarly, at a separate trial for the felon-in-possession counts, the Government would be permitted to introduce evidence of the robberies to prove knowing possession of the gun. *See, e.g., United States v. Page*, 657 F.3d 126, 130 (2d Cir. 2011) ("At a separate gun trial, to prove Page's knowing possession of the gun, the government would have been entitled to offer evidence of his narcotics trafficking.").

Here, as in *Page,* the combined charges simply "reflect the full scope of [the defendant's] criminal conduct." *Id.* at 132. Therefore, the Court finds that there is "a sufficient logical connection" between the felon in possession counts and the remaining counts. *Page*, 657 F.3d at 130.

The Defendant argues that severance is nevertheless warranted because of the possible ensuing prejudice if the counts are tried together.

Rule 14(a) provides relief from joinder. It states that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, . . . or provide any other relief that justice requires." FED. R. CRIM. P. 14(a).

To prevail on a motion to sever pursuant to Rule 14(a), a defendant must show that a failure to sever will cause him "substantial prejudice in the form of a miscarriage of justice." *Page*, 657 F.3d at 129; *see also United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (stating that a defendant seeking severance bears a "heavy burden" of showing that joinder will result in substantial prejudice). Thus, a defendant must establish that "unfair prejudice [will] result[] from the joinder, not merely that he might have [] a better chance for acquittal at a separate trial." *Page*, 657 F.3d at 129 (quoting *United States v. Rucker*, 586 F.2d 899, 902 (2d Cir. 1978) (internal quotation marks omitted)). Furthermore, when a defendant seeks severance, the prejudice that must be established from the joinder of offenses must also be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *Page*, 657 F.3d at 129 (quoting *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998)).

However, "less drastic measures than severance, such as limiting instructions, often will suffice to cure any risk of prejudice and permit joinder." *Page,* 657 F.3d at 129 (citing *Zafiro v. United States,* 506 U.S. 534, 539, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993)). "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538–39. "[T]he sound exercise of [the district court's] discretion is virtually unreviewable." *Amato,* 15 F.3d at 237 (internal citations and alterations omitted). Relevant factors to be considered include whether the joinder of counts is proper, whether separate trials would require much of the same evidence, and

whether the danger of unfair prejudice may be limited by alternative measures. *See Page,* 657 F.3d at 130–31.

In *Page,* the Second Circuit rejected the "contention that a felon-in-possession charge must *always* be severed from other charges," so long as "there is a logical connection between the felon-in-possession count and the other charges, there is a similarity in the evidence necessary to prove the different charges, the trial court takes steps to limit the danger of prejudice and gives a proper limiting instruction, and the defendant is not substantially or unfairly prejudiced." *Page,* 657 F.3d at 132. *Page* thus directs the trial courts to consider whether there is a "sufficient logical connection" between the counts; whether "separate trials . . . would have required much of the same evidence;" and whether there are "adequate precautions to limit the danger of unfair prejudice." *Id.* at 130 (internal citations and quotation marks omitted). However, *Page* did not alter or limit the mandate of Rule 14(a) or the Supreme Court's statement that "the tailoring of the relief to be granted [from prejudicial joinder is left] to the district court's sound discretion." *Zafiro,* 506 U.S. at 538–39; *see also Page,* 657 F.3d at 129. In fact, the Second Circuit in *Page* unequivocally stated:

> Nothing in this opinion should be taken to be a denunciation of the practice of bifurcating a felon-in-possession charge from other charges in a single multi-charge trial [when] doing so would better protect the defendant from prejudice than a limiting instruction, and the district court determines that a limiting instruction cannot adequately protect the defendant from substantial prejudice and bifurcating the trial of that charge would provide such protection.

*Page,* 657 F.3d at 132; *see also United States v. Lee,* 549 F.3d 84, 88, 94–95 (2d Cir. 2008) (affirming trial court's denial of motion to sever, but sanctioning bifurcation of two counts, which included a count of felon-in-possession of a firearm, into two trial phases).

Here, there is some risk that the Defendant will be prejudiced by the joinder of the charges. However, as the case law makes clear, that does not mean that severance is required. Instead, the

Court finds that bifurcation of the charges, to which the Government has consented, would sufficiently remove any prejudice.  *See United States v. Amante*, 418 F.3d 220, 224 n.2 (2d Cir. 2005) ("We note that in a multi-count trial, a decision to bifurcate a felon-in-possession charge in its entirety from other charges . . . may be appropriate in certain circumstances.").

As the Government has consented to bifurcation of the charges, and severance is not required to remove any possible prejudice, the Court orders that the felon-in-possession counts be bifurcated from the other charges.  Having already found that the counts were properly joined, the Court finds that bifurcation is a less drastic measure than severance that will cure any risk of prejudice.  *Page,* 657 F.3d at 132.

Accordingly, the Defendant's motion to sever or bifurcate is granted to the extent that the felon-in-possession counts are to be bifurcated from the other counts at trial.

## D.  As to the Defendant's Motion to Compel Election between Multiplicitous Counts

The Defendant moves, pursuant to Rule 12(b)(3)(B)(ii), to compel election between multiplicitous counts.  Specifically, the Defendant argues that the nine counts of conspiracy charge the Defendant are based on the same alleged conduct and are therefore multiplicitous.  In opposition, the Government contends that the evidence will show that there were multiple conspiracies.  In the Court's view, whether there are multiple conspiracies is a question of fact properly submitted to the jury.

"One basis upon which courts have dismissed multiplicitous counts from an indictment is the Double Jeopardy Clause of the Fifth Amendment, which provides that no person 'shall be subject for the same offense to be twice put in jeopardy of life or limb.'"  *United States v. Bin Laden*, 91 F. Supp. 2d 600, 614–15 (S.D.N.Y. 2000) (quoting U.S. CONST. AMEND. V) (collecting cases).  The Double Jeopardy clause provides that an individual cannot be punished multiple times

for the same offense or be subjected to multiple prosecutions for the same offense.  *See Hudson v. United States,* 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997) (citations omitted); *see also United States v. Fiore,* 821 F.2d 127, 130 (2d Cir. 1987) ("The multiplicity doctrine is based upon the double jeopardy clause . . . which assures that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." (quoting *Brown v. Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977) (internal quotation marks omitted))).

"Because a multiplicitous indictment would, at least in theory, expose a defendant to multiple punishments for the same offense, the Double Jeopardy Clause requires the Court to dismiss from the Indictment any counts that the Court finds to be multiplicitous."  *Bin Laden*, 91 F. Supp. 2d at 615 (internal citations omitted).

"An indictment is multiplicitous," in the sense forbidden by the Double Jeopardy Clause, "when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed."  *United States v. Walsh,* 194 F.3d 37, 46 (2d Cir. 1999) (quoting *United States v. Chacko,* 169 F.3d 140, 145 (2d Cir. 1999) (internal quotation marks omitted)); *see also United States v. Holmes,* 44 F.3d 1150, 1153–54 (2d Cir. 1995).

Courts typically use the *Blockburger* test to analyze whether counts are multiplicitous.  *See United States v. Dixon,* 509 U.S. 688, 696, 113 S. Ct. 2849, 125 L. Ed.2d 556 (1993) (citing, *inter alia*, *Blockburger v. United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932)).

As to the crime of conspiracy, "[t]he gist of the crime of conspiracy . . . is the agreement . . . to commit one or more unlawful acts," *Braverman v. United States,* 317 U.S. 49, 53, 63 S. Ct. 99, 87 L. Ed. 23 (1942), and "multiple agreements to commit separate crimes constitute multiple conspiracies," *United States v. Broce,* 488 U.S. 563, 571, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989).

The Second Circuit's decision in *United States v. Jones*, 482 F.3d 60 (2d Cir. 2006) provides guidance here.  In *Jones*, the Court stated:

> [T]he question of whether the evidence shows a single conspiracy or more than one conspiracy is often not determinable as a matter of law or subject to bright-line formulations.  For example, although an agreement is essential, it is not necessary that each coconspirator have expressly agreed with—or even have known the identities of—all the other coconspirators in order for the jury to find that there was but a single conspiracy.  *See, e.g., United States v. Martino,* 664 F.2d 860, 876–77 (2d Cir. 1981), *cert. denied,* 458 U.S. 1110, 102 S. Ct. 3493, 73 L. Ed. 2d 1373 (1982).  Changes in membership, differences in time periods, and/or shifting emphases in the location of operations do not necessarily require a finding of more than one conspiracy.  *See, e.g., United States v. Vila,* 599 F.2d 21, 24 (2d Cir.), *cert. denied,* 444 U.S. 837, 100 S. Ct. 73, 62 L. Ed. 2d 48 (1979); *United States v. Tramunti,* 513 F.2d 1087, 1106 (2d Cir.), *cert. denied,* 423 U.S. 832 (1975).  On the other hand, "[t]he participation of a single common actor in what are allegedly two sets of conspiratorial activities does not establish the existence of a single conspiracy . . . ." *United States v. Korfant,* 771 F.2d 660, 663 (2d Cir. 1985); *see, e.g., United States v. Macchia,* 35 F.3d 662, 668 (2d Cir. 1994) (the fact that there was "overlap with respect to a number of characteristics, including time frame, geographic locale, participants, and criminal objective" does not necessarily mean that there was but a single conspiracy); *United States v. Papadakis,* 510 F.2d 287, 296 (2d Cir.) ("[T]here is no reason why people cannot enter into two separate criminal agreements more or less at the same time[.]"), *cert. denied,* 421 U.S. 950, 95 S. Ct. 1682, 44 L. Ed. 2d 104 (1975).
>
> Where, as here, separate counts of a single indictment allege that the defendant participated in more than one conspiracy in violation of the same statutory provision, but allege that the conspiracies existed for different—albeit overlapping—periods of time, and that the defendant, in each alleged conspiracy, had different groups of coconspirators, the question of whether one, or more than one, conspiracy has been proven is a question of fact for a properly instructed jury.  *See, e.g., United States v. Orozco–Prada,* 732 F.2d 1076, 1086 (2d Cir.), *cert. denied,* 469 U.S. 845 (1984); *United States v. Alessi,* 638 F.2d 466, 472 (2d Cir. 1980); *see generally United States v. Macchia,* 35 F.3d at 672–73 (Newman, then-C.J., concurring).

*Id.* at 72–73.

The conspiracy counts here allege that the Defendant conspired on multiple dates to commit robbery: July 2014 (count 1); October 2014 (count 4); between August 4, 2015 and August 22, 2015 (count 7); between September 1, 2015 and September 18, 2015 (count 11); between

August 4, 2015 and December 24, 2015 (count 14); January 13, 2016 (count 17); March 15, 2016 (count 20); between March 21, 2016 and March 26, 2016 (count 23); and between April 28, 2016 and May 3, 2016 (count 27). The Government contends that the evidence will show that "[the Defendant] used different co-conspirators to commit particular robberies over an extended time period, who do not know one another[,] or even know that the other robberies [were] planned," and therefore there were multiple conspiracies. (Gov't. Opp. at 24).

Therefore, the Court finds that this is a question of fact properly submitted to a jury: whether the Defendant engaged in multiple conspiracies to rob different individuals. Accordingly, the Defendant's motion to compel election between multiplicitous counts is denied, as the counts are not multiplicitous.

### E. As to the Defendant's Motion to Suppress Identification Testimony

The Defendant moves to suppress what he claims is possible identification testimony from police officers pursuant to Rule 12(b)(3)(C). The Government opposes the Defendant's motion on several bases: that the Defendant failed to file sworn allegations of fact in support of his motion; that there is no identification to suppress; and that neither the Defendant's physical body nor his statements regarding his pedigree can be suppressed. The Court finds that the Defendant has failed to file sworn allegations of fact, and that the Defendant seeks remedies that the Court cannot give— suppression of police observations and of the Defendant's identity.

#### 1. Factual Background of the Police Encounter

On August 17, 2015, two perpetrators entered a home on Smith Road in Lake Grove, New York and robbed a drug dealer at that location ("John Doe #1"). The Government submits that the Defendant was later identified as one of the perpetrators. John Doe #1 was pistol-whipped by one

of the perpetrators, and suffered substantial injuries. No one was arrested at that time, and the robbery remained unsolved.

On March 25, 2016, a perpetrator again entered the same residence to rob John Doe #1. The Government submits that the Defendant has been identified as the perpetrator. John Doe #1 was pistol-whipped until he was unconscious. John Doe #1 again suffered substantial injuries, and required medical treatment at a hospital. No one was arrested at that time, and the robbery remained unsolved.

On March 26, 2016, while John Doe #1 was still in the hospital, a perpetrator again entered the residence on Smith Road in Lake Grove, New York. At or about 7:49 p.m., a downstairs neighbor heard someone in the residence and called 911. The police arrived at approximately 7:58 p.m., and saw a black male wearing a black and white hooded sweatshirt and a red hat flee the location into the woods nearby.

About a half hour later, at or about 8:29 p.m., Detectives Christopher Tine and Arthur Rall, who were looking for the perpetrator of the burglary, saw the Defendant walking near the corner of Hawkins Avenue and Washburn Street. That location is approximately one mile from the location where the burglary took place.

The Defendant was wearing black and white sweatpants, and a thin, red, long-sleeved shirt. The Defendant was not wearing a jacket, and the Government states that it was cold that evening. The detectives saw that the Defendant was sweating, had dirt stains on his pants and sneakers, and that there were pulled threads on his shirt. The Defendant did not have a wallet, a cell phone, or any identification on him. When the detectives asked him what he was doing, the Defendant said that he and his girlfriend were traveling from Bay Shore to Bellport/Patchogue, and that he had a fight with his girlfriend while in the car. He stated that he had jumped out of their car without any

of his belongings. The Government noted in its memorandum that Lake Grove is not on the way from Bay Shore to Bellport/Patchogue. The Defendant told the detectives that his date of birth was 11/28/1986 after being warned that it is a crime to give false identification information. A computer check revealed that the Defendant's date of birth is 11/26/1985.

The uniformed officers who responded to the 911 call and observed the perpetrator flee arrived at the location where the Defendant was stopped by the detectives. The uniformed officers were unable to identify the Defendant as the individual who had fled the location of the burglary.

At approximately 8:32 p.m., Detective Tine arrested the Defendant for False Personation, N.Y. PENAL LAW § 190.23, which is a class B misdemeanor under New York law.

On the morning of March 27, 2016, Detective Vincent Callahan arrested the Defendant for Burglary in the Second Degree, N.Y. Penal Law §140.25-2. Among other evidence allegedly linking the Defendant to the crime, a cellphone was recovered from the roof of the burglarized residence that had the Defendant's photo on the lock screen. Several months later, a DNA test revealed that the Defendant's DNA was on the red and blue hat recovered from the scene.

## 2. Discussion

A defendant who is moving to suppress evidence is not automatically entitled to an evidentiary hearing. *United States v. Barrios*, 210 F.3d 355, 2000 WL 419940, at *1 (2d Cir. 2000) (summary order). "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, detailed, and nonconjectural" to enable a court to conclude that there are contested issues of fact. *Jones v. United States*, 365 F. App'x 309, 310 (2d Cir. 2010) (citing *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992)). Put differently, "[a]bsent a contested issue of material fact, a defendant is not entitled to an evidentiary hearing." *United States v. Pierce*, No. 06-CR-42, 2007 WL 1175071, at *3 (E.D.N.Y. Apr. 19, 2007).

"Moreover, there are requirements as to what sort of evidence can create a factual dispute that would necessitate an evidentiary hearing on a motion to suppress. It is well-settled that a hearing is not required if a defendant fails to support his factual allegations with an affidavit from a witness with personal knowledge." *United States v. Harun*, 232 F. Supp. 3d 282, 285 (E.D.N.Y. 2017) (citing, *inter alia*, United States v. Mottley, 130 F. App'x 508, 510 (2d Cir. 2005)).

As this Court has previously stated, "[c]ourts in this Circuit have 'repeatedly' denied motions to suppress without a hearing where defendants have failed to provide affidavits alleging facts based on personal knowledge." *United States v. Perryman*, No. 12-CR-0123 ADS, 2013 WL 4039374, at *6 (E.D.N.Y. Aug. 7, 2013) (Spatt, J.) (citing *United States v. Larranga Lopez,* 2006 WL 1307963, at *3 (E.D.N.Y. May 11, 2006); *United States v. Shaw,* 260 F. Supp. 2d 567, 570 (E.D.N.Y.2003) ("[I]n the absence of an affidavit based on personal knowledge, no evidence exists to dispute the facts described by the Government."); *United States v. Aparo,* 221 F. Supp. 2d 359, 369 (E.D.N.Y. 2002) (denying a motion to suppress where the defendant had "not submitted an affidavit alleging facts which would require the suppression of statements if those facts were proved at a hearing."); *United States v. Fruchter,* 104 F.Supp.2d 289, 308 (S.D.N.Y.2000) ("To create a factual dispute, defendant must submit sworn factual allegations from an affiant with personal knowledge."); *United States v. Simpkins,* 1996 WL 629567, at *1 (E.D.N.Y. Oct. 16, 1996) ("The motion is denied on the ground that defendant has failed to provide an affidavit based on her own personal knowledge."); *United States v. Brumby,* 1992 WL 373686, at *3 (E.D.N.Y. Nov. 30, 1992) ("The government argues that Sanders' motions to suppress are not supported by an affidavit based on personal knowledge and therefore insufficient as a matter of law. This Court agrees.")).

Therefore, the Defendant's motion to suppress is denied on the grounds that he failed to provide sworn statements of fact disputing the Government's version of events.

Notwithstanding the Defendant's failure to provide affidavits based on personal knowledge, the motion to suppress is also denied on the merits.

The Defendant seeks to suppress "any testimony about [the police] encounter." (Def.'s Mot. to Suppress Ident. Test. (ECF No. 65) at 3). The Government does not contend that the police officers who stopped the Defendant on March 26, 2016 will identify the Defendant as the person who committed the robberies on either March 25, 2016, March 26, 2016 or August 27, 2015. The Government instead states that the evidence will show that the officers saw the Defendant one mile away from the location of those robberies about an hour later, sweaty and dirty. The officers asked him for pedigree information, including what he was doing.

The Defendant does not seek suppression of an identification made by a witness to the robberies; he instead seeks suppression of the fact that the police officers observed him near the location. This is not an "identification." *See, e.g., Brown v. Harris*, 666 F.2d 782, 786 n.4 (2d Cir. 1981) (stating that the district court founds that "the proposed testimony was not identification testimony in its usual sense, in that the officers would not testify as to their personal knowledge of petitioner's involvement in the crime," and agreeing that the petitioner's constitutional rights were not violated). This is clear because there can be no suggestiveness in the fact that the police saw the Defendant on the street. *See, e.g., United States v. Bautista,* 23 F.3d 726, 729 (2d Cir. 1994) (stating that evidence of a prior identification will be excluded "only if the procedure that produced the identification is so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law" (internal citations and quotation marks omitted)). Therefore, there is no identification for the Court to suppress.

As to the Defendant's statements about his pedigree information, it is clear from the case law that pedigree information is not something that can be suppressed, because a Defendant's identity cannot be suppressed, and because questions concerning pedigree do not amount to custodial interrogation. *See I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039, 104 S. Ct. 3479, 3483–84, 82 L. Ed. 2d 778 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *United States v. Adegbite*, 846 F.2d 834, 838–39 (2d Cir. 1988) ("[T]he solicitation of information concerning a person's identity and background does not amount to custodial interrogation prohibited by *Miranda* . . . . In any event, the identity of defendants is not suppressible under the exclusionary rule." (internal citations and quotation marks omitted)). Therefore, the Defendant's statements concerning his pedigree are not suppressible.

In any event, in the undisputed facts before the Court, the officers had the required level of suspicion to stop and ask the Defendant questions. He matched the description of the perpetrator of a burglary that occurred approximately thirty minutes earlier, and was found less than a mile away from that location. The Defendant was sweating, had dirt on his clothes and shoes, and was not wearing a jacket or a sweatshirt on a cold night. Therefore, the detectives who stopped and asked the Defendant pedigree questions had reasonable suspicion that criminal activity was afoot. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968); *see also United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989) ("The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop." (internal citations and quotation marks omitted)).

Accordingly, the Defendant's motion to suppress identification testimony and pedigree information pursuant to Rule 12(b)(3)(C) is denied.

### F. As to the Defendant's Motion to Suppress Evidence Recovered during a Parole Search on June 10, 2016

The Defendant moves, pursuant to Rule 12 b(3)(C), to suppress evidence recovered during the execution of a parole warrant on June 10, 2016. The Defendant's arguments mostly address the seizure of his cellular phone. Regarding the cell phone, the Defendant contends that its seizure by parole officers was not rationally or reasonably related to their duties. In opposition, the Government argues that it was so related, and that it would have been inevitably discovered pursuant to the search warrant that was executed approximately a month later. As a last resort, the Government asks that this Court not apply the exclusionary rule because the search was done by parole. The Court finds that a suppression hearing is warranted regarding the seizure of the cellular phone.

#### 1. The Relevant Factual Background

The following facts are drawn solely from the parties' moving papers.

On April 20, 2015, the Defendant entered the custody of the New York State Department of Corrections to serve a term of two years of incarceration. The Defendant was released on parole on August 4, 2015. The Defendant's conditions of release included that he "w[ould] permit [his] Parole Officer to visit [him] at [his] residence . . . and [he] w[ould] permit the search and inspection of [his] person, residence and property." (State of N.Y. Dep't of Corrections and Comm. Supervision Certificate of Release to Post-Release Supervision (ECF No. 62-1) ("Parole Release form") at 4); *see also* N.Y. COMP. CODES R. & REGS. tit. 9, § 8003.2(d) ("A releasee will permit his parole officer to visit him at his residence and/or place of employment and will permit

the search and inspection of his person, residence and property."). The Defendant signed the Parole Release form agreeing to the terms and conditions of his parole.

On March 26, 2016, the Defendant was arrested for false personation, N.Y. PENAL LAW §190.23.

On May 29, 2016, a parole warrant was issued for the Defendant alleging that the Defendant violated the terms of his release in six different ways: giving false pedigree information to police during a burglary investigation; allegedly committing burglary; failing to notify his parole officer of his arrest; he was outside of his approved residence after his 7 p.m. curfew on March 26, 2016; failing to report to his parole officer on March 23, 2016; and he was not at his approved residence during curfew on March 27, 2016.

On June 10, 2016, New York State parole officers executed the parole warrant and arrested the Defendant at his apartment in Bay Shore, New York. Parole officers seized cash, cocaine, and a cellphone. Local law enforcement did not enter the Defendant's premises with parole officers, but they were called when parole officers discovered contraband. While the cocaine and cash were vouchered by the Suffolk County Police Department, parole kept the cellphone for safekeeping.



███████████████████████ While counsel for the Defendant submitted an affirmation, the Court will address the sufficiency of that affirmation below.

### 3. Discussion

"The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." *United States v. Newton*, 369 F.3d 659, 664 (2d Cir. 2004) (citing U.S. CONST. AMEND. IV; *Kyllo v. United States,* 533 U.S. 27, 33–34, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001)). To this end, the Fourth Amendment restrains the government from engaging in "unreasonable searches and seizures," U.S. CONST. AMEND. IV, hence, the "touchstone in evaluating the permissibility of any search is reasonableness." *United States v. Julius*, 610 F.3d 60, 64 (2d Cir. 2010) (internal citations and quotation marks omitted).

"Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Samson v. California*, 547 U.S. 843, 848, 126 S. Ct. 2193, 2197, 165 L. Ed. 2d 250 (2006) (quoting *United States v. Knights,* 534 U.S. 112, 118–19, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001)).

In *Samson*, the Supreme Court, analyzing the relevant California parole statutes, found that suspicionless searches of California parolees do not violate the Fourth Amendment. 547 U.S. at 855–56.

Prior to *Samson*, the Second Circuit adopted the test announced by the New York State Court of Appeals regarding parole searches. *See United States v. Grimes*, 225 F.3d 254, 258 (2d Cir. 2000) (citing *People v. Huntley,* 43 N.Y.2d 175, 181, 401 N.Y.S.2d 31, 371 N.E.2d 794 (N.Y. 1977)). That test states that "whether a parole search was unreasonable and thus prohibited by

constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty." *Id.* (internal citations, quotation marks and alterations omitted).

"The Second Circuit has not yet answered the question of whether *Samson* changes its past jurisprudence applying *Huntley* to parole and probation searches." *Gerena v. Pezdek*, No. 913CV953DNHATB, 2015 WL 9582730, at *4 n.9 (N.D.N.Y. Dec. 8, 2015) (collecting cases that show that the Second Circuit has deferred deciding the issue), *report and recommendation adopted*, No. 913CV953DNHATB, 2015 WL 9581834 (N.D.N.Y. Dec. 30, 2015); *see also United States v. White*, 622 F. Supp. 2d 34, 41 (S.D.N.Y. 2008) ("Courts disagree as to whether or not the relevant parole regulation in New York is similar to the California statute at issue in *Samson,* and thus there is no consensus on whether or not *Samson* applies to cases involving New York parolees."). Several courts have found that the New York parole language in the waiver and regulation is similar enough to the California parole statute to rely on *Samson*. *See White*, 622 F. Supp. 2d at 41 (collecting cases). Other courts have continued to apply *Huntley* and *Grimes* in the absence of direct language from the circuit, and yet others disagree that the New York and California parole regulations are sufficiently similar. *See id.* (collecting cases).

In the absence of Second Circuit guidance providing otherwise, this Court will follow Second Circuit precedent and analyze the Defendant's motion under the more protective test in *Grimes* and *Huntley*.

"A parolee's reasonable expectations of privacy are less than those of ordinary citizens, and are even less so where, as here, the parolee, as a condition of being released from prison, has expressly consented to having his residence searched by his parole officer." *United States v. Massey*, 461 F.3d 177, 179 (2d Cir. 2006) (internal citations omitted); *see also Samson,* 547 U.S.

at 852, (stating that parolees, by virtue of their status, do not have "an expectation of privacy that society would recognize as legitimate.").

Here, there is no dispute that the parole officers were justifiably inside the Defendant's residence pursuant to the parole warrant, and that the Defendant agreed to a search by parole officers as a condition of his parole. The Defendant contends that the seizure of his cellphone was not rationally or reasonably related to the parole officers' duties.

First, to the extent that the Defendant initially moved to suppress the cocaine and money, the Court finds that their seizure was clearly rationally and reasonably related to the parole officers' duties, which include investigating whether the parolee has committed further crimes. *United States v. Barner*, 666 F.3d 79, 84–85 (2d Cir. 2012) ("[P]arole officers have a duty 'to investigate whether a parolee is violating the conditions of his parole, one of which, of course, is that the parolee commit no further crimes.'" (quoting *United States v. Reyes,* 283 F.3d 446, 459 (2d Cir. 2002))). While the Defendant initially raised the "stalking horse" theory to suppress those items, this Court and the Circuit have explicitly stated that the stalking horse theory does not apply in the Second Circuit. *See United States v. Chandler*, 164 F. Supp. 3d 368, 380–81 (E.D.N.Y. 2016) (Spatt, J.) (citing *Reyes*, 283 F.3d at 463). Therefore, the Defendant's motion to suppress the cocaine and money recovered during the execution of the parole warrant on June 10, 2016 is denied. Further, as the Defendant fails to "establish[] any contested issues of fact going to the validity of the search, " *United States v. Watts*, 301 F. App'x 39, 42–43 (2d Cir. 2008) (quoting *United States v. Watson,* 404 F.3d 163, 167 (2d Cir. 2005) (internal quotation marks omitted)), the Defendant's motion for a suppression hearing regarding the search and seizure of the drugs and money is denied as well.

As to the seizure of the Defendant's cell phone, the Government contends that the parole officers seized the phone for safekeeping as part of their duties. The Government did not submit any affidavits from parole officers, or any parole handbooks or guidebooks in support of this assertion. The Defendant's affidavit does not address the rationality or reasonableness of the seizure of the cell phone. While counsel for the Defendant's affirmation claims that the seizure was not rationally or reasonably related to the parole officer's duties, "an attorney's affidavit, absent personal knowledge, is insufficient to justify a suppression hearing." *Perryman*, 2013 WL 4039374, at \*6 (citing *United States v. Gillette,* 383 F.2d 843, 848 (2d Cir. 1967)).

Nevertheless, the Court is hesitant to deny the Defendant's request for a hearing based solely on assertions made by the Government in its papers, particularly when it is the Government's burden to justify the warrantless search of the Defendant's purported residence by a preponderance of the evidence. *See United States v. Herron*, 18 F. Supp. 3d 214, 221 (E.D.N.Y. 2014) ("On a motion to suppress, the defendant bears the initial burden of establishing that a government official acting without a warrant subjected him to a search or seizure. Once the defendant has met this burden, the burden then shifts to the government to demonstrate by a preponderance of the evidence that the search or seizure did not violate the Fourth Amendment." (internal citations and quotation marks omitted)). The Government did not provide any affidavits or sworn testimony from parole officers, or any type of guidelines used by parole officers when conducting a search pursuant to a parole arrest warrant. Even on the Government's papers alone, there is an issue of fact whether the seizure of the cellular phone was rationally and reasonably related to the parole officers' duties.

The Court also disagrees with the Government's assertion that the cellular phone would have been inevitably discovered during the execution of the search warrant on July 8, 2016.

Under the "inevitable discovery" doctrine, evidence obtained during the course of an unreasonable search and seizure should not be excluded "if the government can prove that the evidence would have been obtained inevitably" without the constitutional violation. *Nix v. Williams,* 467 U.S. 431, 447, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984); *see also United States v. Eng,* 997 F.2d 987, 990 (2d Cir.1993) (stating that the inevitable discovery doctrine "requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what *would have happened* had the unlawful search never occurred" (emphasis in original) (internal quotation marks omitted)). Of importance here, the Court must "find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." *United States v. Heath,* 455 F.3d 52, 60 (2d. Cir. 2006).

Here, it is unclear on the limited record before the Court whether the Defendant's residence was secured in any way between the time parole arrested him and the date of the execution of the search warrant. While it appears logical to assume that the seized phone would still have been at the location because four other phones were seized during the execution of the search warrant, along with voluminous other evidence, the Court is not permitted to make such assumptions under the inevitable discovery doctrine. Instead, as stated above, the Court must "find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." *Heath,* 455 F.3d at 60.

The Court does not have such a high level of confidence here because it is possible that the cell phone could have been destroyed or removed before the search warrant was issued. *See, e.g., United States v. Cabassa*, 62 F.3d 470, 472 (2d Cir. 1995) (finding that the Court was unable to determine with "any certainty" whether the evidence would have disappeared during the time it

took to secure the search warrant). In *Cabassa*, law enforcement surrounded a building while another group of officers went to obtain a search warrant. Before a search warrant was ever obtained, officers entered the location and seized drugs and other evidence. The Court was skeptical that the drugs would not have been destroyed during the time it would have taken to obtain a search warrant.

Here, four weeks went by. █████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

The Court cannot say with any confidence on the limited record before it that the phone would have definitely remained at the location for approximately four weeks until the search warrant was executed. It is possible that the seizure was justified under the theory of inevitable discovery, but whether that is true will only be determined after a suppression hearing.

Finally, the Court does not agree with the Government's assertion that the exclusionary rule of the Fourth Amendment *per se* does not apply when parole officers search and seize property. The Supreme Court case cited by the Government relates to parole revocation hearings, and the Court even stated that "assuming that the search violated [the defendant's] Fourth Amendment rights, the evidence could have been inadmissible at trial if [the Defendant] had been criminally prosecuted." *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363, 118 S. Ct. 2014, 2019, 141 L. Ed. 2d 344 (1998). In any event, the issue of whether suppression would deter parole officers in the future will be further developed at the hearing.

Accordingly, the Court, in its discretion, denies the Defendant's motion to suppress the cell phone recovered during the June 10, 2010 search without prejudice, and grants the Defendant's request for an evidentiary hearing solely on the question of whether the seizure of the Defendant's

cell phone by New York State parole officers was rationally and reasonably related to the parole officers' duties. *See United States v. Grant*, No. 06 CR 732 (DLI), 2008 WL 111169, at *1 (E.D.N.Y. Jan. 8, 2008) ("[E]ven where the preliminary showing of facts requiring a hearing is weak, the court has discretion to determine whether to hold a suppression hearing.").

**G. As to the Defendant's Motion to Suppress the Evidence Recovered Pursuant to the Search Warrant Executed on July 8, 2016**

The Defendant also moves for suppression of all evidence recovered during the execution of a search warrant on July 8, 2016 because he claims that the affidavit upon which the warrant was issued was lacking in probable cause and contained material falsehoods. The Government states that the affidavit is presumptively reasonable because it was issued by a neutral magistrate, and that the Defendant cannot satisfy the burden required for a *Franks* hearing. The Court finds that the Defendant has not demonstrated that a hearing is required under *Franks v. Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

## 2. Discussion

The vehicle through which a Defendant can challenge statements made in an affidavit that are allegedly intentionally or recklessly misleading is a *Franks* hearing.  *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008).  In *Franks*, the Supreme Court held that while a presumption of validity attaches to a law enforcement officer's affidavit, a defendant is entitled to a hearing to test the veracity of the affiant's statements in certain circumstances.  *Id.* (citing *Franks*, 438 U.S. at 171).

"Specifically, the [Supreme] Court held that the Fourth Amendment entitles a defendant to a hearing if he or she makes a 'substantial preliminary showing' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause."  *Id.* (quoting *Franks*, 438 U.S. at 155–56 (further internal citations omitted)).  In order to avoid fishing expeditions into affidavits that are otherwise presumed truthful, the Court held in *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) that to mandate an evidentiary hearing:

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient. . . .  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Id.* at 171–72.

Here, the Defendant argues that the search warrant did not sufficiently state probable cause because Agent Liscinsky intentionally or recklessly misled Judge Shields by misstating the scope and purpose of the parole search that was conducted approximately a month before the search warrant was signed. Specifically, the Defendant points to the following statement made by the affiant in support of the search warrant application:

> On June 7th 2016, [the Defendant] was arrested in Brookhaven, New York for driving while his license was suspended, as well as other infractions. On June 10, 2016, NYS Parole authorities arrested [the Defendant] for violating his parole and conducted a limited search of the [Defendant's residence]. The NYS Parole authorities discovered a small amount of Cocaine, Xanax, and $6[,]286 in U.S. Currency. The parole officers were not aware that [the Defendant] was suspected of conducting home invasion robberies/murder and, as such, they were not looking for all of the items relevant to such investigation as described in the Attachments hereto.

(Aff. in Supp. of Search Warrants ¶ 18). The Defendant argues that the search was not limited, and that parole officers were aware that the Defendant was implicated in at least one burglary, because the burglary served as one of the bases for his parole violation.

As to the first point, the Court does not find that Agent Liscinsky's statement regarding the scope of the parole search was false or misleading. It appears that the parole search was, in fact, limited. Indeed, parole officers merely seized a quantity of cocaine, United States currency, and a cellular phone. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ Parole officers seized evidence whose character was immediately recognizable as criminal, *see Arizona v. Hicks,* 480 U.S. 321, 326–27, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987) (stating that items discovered during a lawful warrantless search may be seized where an officer has probable cause to believe they are evidence of a crime), and a single cellular phone for

safekeeping. ████████████████████████████████████████████████████████

████████████████████████████████████████████ It is clear that the search conducted by parole was limited, while the search sought to be authorized by the search warrant was expansive. The Defendant did not provide any affidavits purporting to support his contention that the parole search was expansive.

As to Agent Liscinsky's statement that parole was unaware of the home invasion robberies and murder, it appears from the parole warrant that parole was only aware of one possible burglary, and were not aware of any murders. Therefore, the Court finds that the statement was not untruthful.

However, even if the Court were to find that Agent Liscinsky's statement was recklessly untruthful, the Defendant falls far short of demonstrating the final element required for a *Franks* hearing. That is, removing the statements regarding both the scope of the search, and the parole officers' lack of awareness regarding the home invasions and murders, there is more than enough information to find probable cause in the affidavit.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



Therefore, even if the Court were to find that Agent Lisckinsky's statements regarding the scope of the search and parole's awareness of the home invasions were false, the Defendant fails to demonstrate that the remaining content in the search warrant affidavit does not amount to probable cause. Said differently, Agent Liscinsky's statements concerning the scope of the parole search and parole's awareness of the burglaries were not necessary for a finding of probable cause.

*See United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) ("The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." (internal citations and quotation marks omitted)).  Accordingly, the Defendant's motion to suppress the evidence recovered during the execution of the July 7, 2016 search warrant is denied, and his motion for a *Franks* hearing is also denied.

## III.  CONCLUSION

For the reasons stated above, the Defendant's motion for bifurcation of the felon-in-possession counts, and the Defendant's motion for a suppression hearing regarding the seizure of the Defendant's cell phone during the execution of the parole arrest warrant on June 10, 2016 are granted.  The Defendant's other motions are denied in their entirety.  The suppression hearing is respectfully referred to Magistrate Judge Anne Y. Shields.

**SO ORDERED**

Dated: Central Islip, New York

November 1, 2017

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge