UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                                             **REPORT AND RECOMMENDATION**

                      -against-                                                    16-CR-545 (ADS)(AYS)

TYRONE ROBINSON,
                             Defendant.
-------------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

      Defendant Tyrone Robinson ("Robinson" or the "Defendant") is charged in a superseding indictment with crimes arising from nine gunpoint robberies and attempted robberies, as well as charges of conspiracy and firearms crimes. Docket Entry herein ("DE") 5. In a Memorandum of Decision and Order dated November 1, 2017 (hereinafter the "November 1 Decision") the District Court granted in part and denied in part several of Defendant's pretrial motions. See DE 83. Relevant here is the denial without prejudice of Defendant's motion to suppress the seizure of his cellular telephone.

      Robinson's cell phone was taken by officers of the New York State Department of Correction and Community Supervision (hereinafter "Parole") during execution of an arrest warrant issued by that office.[1] The government argued that seizure of the cell phone was justified by a "safekeeping" policy applied by Parole when a parolee is arrested. As to that branch of Robinson's pretrial motion, the District Court held that a hearing was necessary to determine the facts surrounding the alleged policy, and the question of whether the taking of

---

[1] The New York State Department of Correction and Community Supervision was formerly known as the Department of Parole, see Transcript of Suppression Hearing held January 8, 2018 (hereinafter "Tr.") at 5:3-7, and is herein referred to as "Parole."

1

Robinson's cell phone violated the Fourth Amendment to the United States Constitution. That suppression hearing was referred for Report and Recommendation to this Court, which held the hearing on January 8, 2018.

For the reasons set forth below, this Court respectfully recommends that the motion to suppress be denied.

## BACKGROUND

I.   The November 1 Decision and the Scope of the Referral

As noted, the November 1 Decision held that a hearing was necessary to determine the merits of Defendant's motion to suppress the seizure of his cell phone during execution of a Parole arrest warrant (the "Warrant"). The District Court identified three separate areas of inquiry.

First, it was held that a hearing was necessary to determine whether the seizure of the phone was rationally and reasonably related to a parole officer's duties in connection with the execution of the Warrant. With respect to this issue, the District Court noted the Government's position that the seizure was made pursuant to a routine safekeeping policy of such items. In view of the fact that the Government's assertion of this policy was supported by neither factual testimony nor documentary evidence the District Court held that a hearing was necessary to determine the existence and parameters of any such policy.

Next, the District Court noted that a hearing could shed light on the question of whether the seizure might be justified pursuant to the "inevitable discovery" rule. With respect to this theory, the Government argued that the cell phone would have been inevitably discovered during execution of a later search warrant at Robinson's apartment on July 8, 2016 -- nearly one month after execution of parole warrant. At the hearing before this Court, the Government made clear

that it would not be presenting evidence with respect to the inevitable discovery doctrine. Therefore, this Court held no hearing, and makes no findings as to that issue.

Finally, the District Court held that a suppression hearing might develop facts as to whether, assuming an unlawful seizure, the Fourth Amendment requires exclusion of the cell phone. With respect to this issue, the District Court noted that the hearing might allow presentation of evidence as to whether suppression would deter future unlawful behavior by arresting officers.

II.   Facts

The facts set forth below are drawn from documents before the District Court, as well as those developed at this Court's evidentiary hearing. The recitation of facts is in accord with both Rule 12(c) of the Federal Rule of Criminal Procedure, which requires that "essential findings" be stated on the record, and 28 U.S.C. §636(b)(1)(B), which requires that this Court submit proposed findings of fact to the District Court. See Fed. R. Crim. P. 12(c); 28 U.S.C. §636 (b)(1)(B).

A.   Facts Set Forth in the November 1 Decision

Documentary evidence before the District Court established that on August 4, 2015, after service of a New York State sentence to a two year term of incarceration, Robinson was released on parole. See November 1 Decision at 20-21. On March 26, 2016, Robinson was arrested for false impersonation in violation of Section 190.23 of the New York State Penal Law. Id. at 21. Three days later, on March 29, 2016, the Warrant was issued alleging that Defendant violated the conditions of his release. Specifically, Robinson was charged with:

- giving false pedigree information to police during a burglary investigation;
- allegedly committing burglary;

- failing to notify his parole officer of his arrest;

- being outside of his approved residence after his 7 p.m. curfew on March 26, 2016;

- failing to report to his parole officer on March 23, 2016; and

- not being at his approved residence during curfew on March 27, 2016.

On June 10, 2016, parole officers arrived at Robinson's Bay Shore, New York home to execute the Warrant. Id.

B. Facts Developed at the January 9, 2018 Hearing

There were approximately six parole officers involved in June 10, 2016 execution of the Warrant. Tr. 9:1-3. Two of those individuals, Parole Officers Pedro Torres ("Officer Torres" or "Torres") and Eleanor Evans ("Parole Officer Evans" or "Evans") testified at the hearing before this Court. Torres was the officer in charge of executing the Warrant, Tr. 5:23 - 6:2, and Evans was the officer specifically assigned to Robinson's case. Tr. 61:12-13. Both officers testified that cash, substances appearing to be cocaine, drug paraphernalia, and weapons were observed upon entry to Robinson's apartment. Tr. 16:15-18; 64:21- 65:3. Suffolk County Police were summoned to the apartment. Tr. 19:23. They arrested Robinson, and took possession of the contraband, but not of his cell phone. Tr.17:2-7; 19:13-15; 71:21-23.

Torres made the decision to take possession of Robinson's cell phone, Tr. 9:21-22, which he handed to Officer Evans Tr. 10:7-8; 11:11-14; 38:11-15; 63:4-5. The Parole officers executing the Warrant left Robinson's apartment before the departure of the local law enforcement officers who arrested Robinson. Tr. 30:20-24. Both Torres and Evans testified, as discussed below, about their duties as parole officers, and the safekeeping policy and reasons Robinson's cell phone was taken into the possession pursuant to that policy.

As to his duties, Torres referred to the New York State Parole Handbook (the "Handbook"). Government Exhibit No. 12; Tr. 14:10 - 15:13. The Handbook describes parole officers as carrying out the dual responsibilities of acting as "peace officers" to protect the community, and as "caseworkers," to assist parolees in their post-incarceration transition. As caseworkers, Parole officers are responsible for responding to parolees' "needs for service and assistance to increase the likelihood that the parolee will succeed in the community." Id. at 8.

The Handbook is a document prepared for parolees, and not for Parole officers. Tr. 20:21 - 21:1. The duties described therein are, however, consistent with the testimony offered by Torres when describing his duties. Tr. 10:17-19. Those duties are also consistent with Evans' testimony describing a Parole officer's duty to provide support for parolees as they reenter society after incarceration. Tr. 35:5-6. Both Torres and Evans testified as to the importance of cell phones as depositories of information critical to a parolee's ability to maintain contact with their parole officers, as well as other individuals and entities that further community reintegration. Such integration includes post-incarceration employment. The information in a parolee's cell phone likely includes work and family contacts that may be lost if the device is misplaced. Tr. 10:17 - 11:2; 49:18-20.

As to Parole's safekeeping policy, the Government did not produce any particular handbook or other document setting forth a written policy providing for taking possession of an arrested parolee's cell phone for safekeeping. See Tr. 21:9-12; 22:3-5. Both Government witnesses did, however, present testimony in support of their position that it is nonetheless the policy of Parole to exercise the discretion, under certain circumstances to take possession of cell phones for safekeeping. Tr. 21:14; 81:1-5.They also explained the reasons for that action.

5

The testimony of both Torres and Evans established that the taking of Robinson's cell phone for safekeeping was not an isolated event driven by the circumstances of his particular warrant, or subsequent arrest. See Tr. 11:3-4; 38:16-20; 63:12-13. Thus, Torres testified that at any given time there were several cell phones held for safekeeping by Parole. When he last checked in December of 2017, approximately thirty cell phones were within the custody of his department for safekeeping. Tr. 13:13-23. Torres also testified that the taking of Robinson's cell phone was not driven by the nature of the parole violations with which he was charged but only by the facts and circumstances of Robinson's arrest. In particular, Torres stated that Robinson was alone in his apartment when the Warrant was executed. Tr. 9:24 - 10:1. Thus, there was no other person left behind who could secure the phone and hold it for Defendant. Tr. 10:10-13; see Tr. 23:4-6; 61:22.

Torres was also questioned about whether items other than cell phones were similarly taken for safekeeping. He did not know whether any particular items were left behind at Robinson's apartment. Tr. 34:17-20. He testified, however, that no other devices, such as laptops, were routinely taken for safekeeping. Torres distinguished cell phones from other valuable electronic devices that were not held for safekeeping. In particular, he testified that Parole is not a "moving company," and lacks resources to store all of a parolee's possessions. Tr. 35:5-8. He testified that cell phones, however, are small devices that are "more significant to everyday functions than anything else." Tr. 35:9-11.

Unlike large devices, Torres stated that a parolee's wallet might be taken for safekeeping. Tr. 32:9-24. While Torres testified that Robinson's wallet was in his possession at the time of his arrest, there is no indication that Parole took the wallet for safekeeping. Nor was Officer Torres able to testify as to the whereabouts of Robinson's wallet after the arrest. Tr. 42:7-11. Similar to

6

Torres, Officer Evans testified that she did not recall whether Robinson had a wallet with him when he was arrested. Tr. 68:9-11; 83:3-4. She testified, however, that it was generally her practice to allow an arrested parolee to maintain possession of his wallet so that its contents may be accessed to provide identification during arrest processing.  Tr. 68:12-20.

Evans, who transported Robinson's cell phone to Parole, also testified as to her roles as a Parole officer, and the safekeeping procedures at the heart of this matter. Tr. 9-11. After leaving Robinson's apartment, Evans took the cell phone back to her Parole office. She printed out Robinson's pedigree information, placed it in a bag with the cell phone, and placed the bag in a safe. Tr. 64: 9-20. Like Torres, she testified as to the importance of parolees' cell phones as repositories of important contact information. Tr. 64:3-5. She stated that it was commonplace for parole officers to take possession of a parolee's cell phone for safekeeping upon arrest, and that several cell phones were usually in the possession of Parole. Tr. 63:11-18. She explained that such phones were not searched for information, but were simply stored in a safe with the intention of returning them to the parolee upon his release from custody. Tr. 63:22-25; 66:23-67:2; 85:6-9. Evans stated clearly her intent to keep Robinson's cell phone for safekeeping only, and not to search the phone for any evidence. Tr. 67:20 - 68:7. Thus, she testified, unequivocally, that she did not take the cell phone in order to search its contents, and that she had no basis to conduct any such search.  Tr. 75:18-24. It is clear that Robinson's phone was not moved from the safe where it was placed until Parole was presented with legal process requiring its production. See Tr. 67:3-19.

As to the question of whether Parole has clear policy guidelines governing the safekeeping of cell phones, Evans testified that the safekeeping policy did not appear in any training manual, but that such safekeeping was consistent with her role as a case worker/social

7

worker. Tr. 76:5-10. She stated that the decision to keep a parolee's cell phone was within her discretion. Tr. 77:8-11. Thus, as a Parole officer, Evans could, but was not required to, take possession of a parolee's cell phone for safekeeping. That discretion could be exercised upon an arrest taking place at the office of Parole, or one occurring in the field. Tr. 81:10-18. Evans chose to exercise her discretion to do so in this case.

Both witnesses' testimony as to particular procedures involving the creation of safekeeping-related documents was thin. Torres testified that his department was undergoing a "transition," and stated that part of that transition involved changing the location of where cell phones were held for safekeeping, Tr. 13:23 - 14:3, as well as modernizing the paperwork accompanying such safekeeping. Tr. 36:20-23; 43:7-8. He testified that the taking of the cell phone should have appeared on a "chrono" log, but he was unable to produce any documentation showing how the phone was handled. Tr. 43:11 - 44:14-18. He did testify, however, that often the only document showing the chain of custody of a cell phone was a paper inserted in the bag holding the cell phone. Tr. 37:2-5; see Tr. 43:3-6; 48:21 - 49:1. That paper simply indicates the name of the owner of the cell phone so that Parole is able to give the phone back to the parolee upon his release.

Officer Evans testified with slightly more particularity as to Parole's record-keeping procedures. At the hearing, she produced a document identified as Robinson's "chrono" log. Government Exhibit 13; Tr. 70:24 - 71:12. That log noted Robinson's arrest, but contained no notation as to whether or not a cell phone was taken into possession of Parole. Tr. 71:15-17. Evans did testify that the cell phone would have been noted on the document if it were taken into custody as evidence, but not if it were taken only for safekeeping. Tr. 67:24 - 68:5; 72:5-9.

8

ANALYSIS

I.   Legal Principles

   A.   Legal Standards as to the Parole Search and the Fourth Amendment

The issue before this Court is whether the seizure of Robinson's cell phone violated the Fourth Amendment's proscription against "unreasonable government intrusions into areas where they might have a legitimate expectation of privacy." November 1 Decision at 22 (citing United States v. Newton, 369 F.3d 659, 664 (2d Cir. 2004); citing U.S. CONST. AMEND. IV; Kyllo v. United States, 533 U.S. 27, 33–34, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001)). The legal standards applicable to determining the reasonableness of a parole search are set forth in detail in the November 1 Decision. See November 1 Decision at 22-23. Briefly stated, courts in the Second Circuit apply the test that was first set forth by the New York State Court of Appeals in People v. Huntley, 43 N.Y.2d 175, 181, 401 N.Y.S.2d 31, 371 N.E.2d 794 (N.Y. 1977). See United States v. Grimes, 225 F.3d 254, 258 (2d Cir. 2000). Under that test, the reasonableness of a parole search turns on "whether the conduct of the parole officer was rationally and reasonably related to the performance" of a parole officer's duty. Grimes, 225 F.3d at 258.

B.   Legal Standards as to Application of the Exclusionary Rule

As noted by the District Court, Supreme Court precedent holds that the exclusionary rule will not prohibit the introduction of evidence at a parole revocation hearing. See November 1 Decision at 27 (citing Penn. Bd. of Prob. & Parole v. Scott, 524 U.S. 357 (1998)). That Supreme Court holding does not, however, support the theory that evidence illegally obtained during execution of a parole arrest warrant is not subject to the exclusionary rule with respect to a subsequent criminal prosecution. Thus, the Supreme Court noted while that parole boards are not required to exclude evidence obtained in violation of the Fourth Amendment, such evidence,

9

"could have been inadmissible at trial if [the Defendant] had been criminally prosecuted." Penn. Bd. of Prob. & Parole, 524 U.S. at 363.

II.     Disposition of the Motion

Where, as here, a Defendant claims the unconstitutionality of a seizure, the Government bears the burden of justifying the search. See United States v. Herron, 18 F. Supp. 3d 214, 221 (E.D.N.Y. 2014). With this burden in mind, the Court turns to determine whether seizure of the cell phone violated the Fourth Amendment and, if so, whether the exclusionary rule applies.

A.      The Seizure of the Cell Phone Did Not Violate the Fourth Amendment

This Court finds that both Officers Torres and Evans testified credibly as to their duties as Parole officers, the existence of a safekeeping policy within their department, and the circumstances under which the discretion is exercised to take possession of a parolee's cell phone pursuant to that policy. The Court further finds, as discussed below, that Parole's policy is reasonably and rationally related to Parole officers' duties, and that the exercise of that discretionary policy in this case did not violate the Fourth Amendment.

First, the Court credits the testimony of Torres and Evans with respect to the existence of a safekeeping policy, and its relation to their duties. As to that policy, the witnesses' testimony established that Parole officers have the discretion to take cell phones into safekeeping for arrested parolees. Those cell phones are transported to the parole office, and placed in a secure safe. They are not searched for content, but are merely tagged to identify the owner, placed first in a bag bearing identifying information, and then into a safe. Parole takes possession of these phones with the intent of returning them to parolees upon their release.

A written statement of policy would more clearly have set forth Parole's practice with respect to holding cell phones for safekeeping. Nonetheless, the absence of a written document

does not compel a holding that no such policy does, or indeed should, exist. To the contrary, this Court finds that the testimony of both Officers Torres and Evans established the existence of a discretionary policy to hold an arrested parolee's cell phone for safekeeping (and not for the purpose of searching for evidence). That discretionary policy is applied not only to Robinson, but, in appropriate circumstances, to all parolees.

As to whether the policy is rationally and reasonably related to Parole officers' duties, this Court credits and relies on both witnesses' testimony describing their caseworker roles in connection with facilitating community reintegration. E.g., Tr. 15:16-23; 49:17-20. These roles are consistent with those described in the handbook, and generally recognized by courts. See Penn. Bd. of Prob. & Parole, 524 U.S. at 368, 118 S. Ct. at 2022 (describing relationship between parole officers and parolees as "more supervisory than adversarial") (citation omitted).

Torres and Evans credibly established that the taking of cell phones for safekeeping is motivated by the parole officers' intent to carry out their case worker duties. Tr. 47:5-6. There is no question that a cell phone is a critical device allowing a parolee to maintain contact both with his or her Parole Officer and other members of the community, including family members, and prospective and current employers. Loss of this device can certainly adversely impact that contact and, consequently, the ability of the parolee to reintegrate into the community. See Tr. 37:22-38 – 38:2; 49:17-20.

The Court recognizes that where, as here, a cell phone is within the possession of Parole for safekeeping, the safekeeping policy does not further the ability of the parolee to maintain contact with his Parole officer. Obviously, under these circumstances, the parolee cannot call the officer since Parole has the phone. Holding the parolee's cell phone for safekeeping does,

however, further the policies of allowing the parolee to maintain contact information with family and community members.

Allowing Parole to exercise the discretion to keep this important device in a place easily accessible to the parolee upon his release is also important. This is especially true where, as here, the parolee is arrested, and no close individual or family member is present at the scene of the arrest. It is certainly rational and reasonable to believe that a device as small and easily misplaced as a cell phone could become lost to the parolee. As noted, one of the duties of Parole officers is to further the parolees' ability to maintain consistent contact with family members and employers. That duty is reasonably and rationally related to exercising discretion to hold an arrested parolee's cell phone for safekeeping.

This Court notes that neither the testimony of Evans nor that of Torres supported any finding of a clear record-keeping policy with respect to whether or not cell phones were taken into custody of Parole for safekeeping or other reasons. Torres' testimony was vague with respect to Parole's "transition" to some different type of storage and record-keeping procedures. Officer Evans' record-keeping testimony as to these issues was also vague. Thus, while she testified as to circumstances when the "chrono" log would reference the taking of a parolee's cell phone, that testimony did not establish the clear circumstances when that action would be noted. While Evans testified that that taking of Robinson's cell phone should appear on his log, she also testified that such logs note the taking of cell phones only if they are taken for search purposes, and not for safekeeping. It was made clear at the hearing that the only consistent paperwork that accompanies cell phones taken for safekeeping was a single sheet of paper, inserted into the bag holding the cell phone. That paperwork bears only the basic information necessary to allow the identification of the owner of the phone, so that the cell phone can be returned.

Despite the lack of clear and consistent record-keeping, the witness testimony in this case established that Torres and Evans properly acted pursuant to policy, and in Robinson's interest when deciding to take his cell phone. They were motivated by nothing more than the desire to ensure that Robinson would have quick access to his cell phone, and all of the information contained therein upon his release. Importantly, there was no evidence that Parole takes cell phones into safekeeping to further any criminal investigation. Neither witness searched the content of Robinson's cell phone. Indeed, it was not removed from Parole's safe until that office was presented with legal process requiring production of the phone.

In sum, this Court finds that the credible testimony of Officers Torres and Evans established a discretionary policy to take a parolee's cell phone for safekeeping, and that such safekeeping is reasonably and rationally related to furthering the caseworker duties of parole officers. Since the seizure of the cell phone did not violate the Fourth Amendment, the exclusionary rule does not apply, and the Court need make no ruling as to whether it would apply in other circumstances not present here.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's motion to suppress be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to all parties by electronic filing. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. Failure to file objections within the specified time waives the right to appeal both before the district and appellate courts. See 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59; United States v. Ballares, 317 App.'x 36, 37-38 (2d Cir. 2008).

Dated: Central Islip, New York
       January 16, 2018

                                                          /s/ Anne Y. Shields
                                                        Anne Y. Shields
                                                        United States Magistrate Judge