FILED
CLERK

1:41 pm, Nov 13, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
UNITED STATES OF AMERICA,

              -against-

TYRONE ROBINSON,

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
16-CR-545 (S-3)(ADS)

**APPEARANCES:**

**United States Attorney's Office, Eastern District of New York**
*Attorneys for the United States*
610 Federal Plaza
Central Islip, NY 11722
      By:    Allen Lee Bode, Assistant United States Attorney, Of Counsel.

271 Cadman Plaza East
Brooklyn, NY 11201
      By:    Megan Elizabeth Farrell, Assistant United States Attorney, Of Counsel.

**LaRusso Conway & Bartling LLP**
*Attorneys for the Defendant*
300 Old Country Rd, Suite 341
Mineola, NY 11501
      By:    Robert P. LaRusso, Esq., Of Counsel.

**SPATT, District Judge**:

Presently before the Court are several motions by defendant Tyrone Robinson (the "Defendant"): to suppress various pieces of evidence seized and recovered by the Suffolk County Police Department ("SCPD") and the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); to reconsider an order denying suppression of information found on a cellphone taken from the Defendant's residence by New York State ("NYS") parole officers; and to dismiss alleged violations of 18 U.S.C. § 924(c) for failure to state a claim.

For the following reasons, the Court grants the Defendant's motion for a suppression hearing regarding: the evidence seized from the 2016 Black Chrysler Van with New Jersey License

1

M23GCW (the "Rental Van") on March 26, 2016; the evidence seized from the cellphone with the number (718) 350-0346 (the "Roof Cellphone") without a warrant; and evidence seized under the authority of the July 8, 2016 warrant to search the Roof Cellphone. The Court denies the Defendant's remaining motions.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

As not all facts are relevant to the instant motions, the Court will state the relevant facts when they are necessary to the determination of each specific motion. However, the Court will provide a brief overview of the relevant seizures and warrants underlying the motions.

On March 26, 2016, SCPD seized, amongst other things, two cellphones and the Rental Van. The parties dispute the location of and circumstances under which SCPD found the seized items.

On April 15, 2016, SCPD Detective Vincent Callahan ("Callahan") obtained a search warrant for the Rental Van and the cellphone with the number (631) 383-4840 (the "Van Cellphone"). ECF 137-15.

On June 10, 2016, NYS parole officers seized a cellphone (the "Parole Cellphone") pursuant to the Defendant's arrest in his residence.

On July 8, 2016, ATF Special Agent Liscinsky ("Liscinsky") submitted an Affidavit (the "Liscinsky Affidavit") to United States Magistrate Judge Anne Y. Shields in support of an application for warrants to search the Defendant's residence, the Second Floor Apartment of 1087 Martinstein Avenue, Bayshore, New York 11706 (the "Residence" or "Defendant's Residence"); an e-mail account with the address "tyrob1126@gmail.com" (the "Gmail Account"); and the Roof Cellphone. ECF 131-10. After reviewing the Liscinsky Affidavit, Judge Shields issued three

federal warrants, authorizing searches of the Residence, including any locked or closed containers therein, the Roof Cellphone, and the Gmail Account. ECF 131-3; ECF 131-4; ECF 131-5.

On July 21, 2016, after reviewing a June 11, 2018 affidavit, ECF 131-15 (the "Cassidy Affidavit"), United States Magistrate Judge Steven I. Locke issued a warrant to search the Parole Cellphone. ECF 131-16.

## B. PROCEDURAL BACKGROUND

On October 9, 2016, the Government filed a complaint against the Defendant charging the Defendant with alleged violations of 18 U.S.C. § 1951(a), Hobbs Act robbery, and 18 U.S.C. § 924(c), use of a firearm in furtherance of a crime of violence. ECF 1.

On January 11, 2017, the Government filed a 22-count indictment against the Defendant. ECF 16.

On March 15, 2017, the Government filed a 32-count superseding indictment charging the Defendant with multiple counts of Hobbs Act robbery, Hobbs Act attempted robbery, and Hobbs Act robbery conspiracy, 18 U.S.C. §§ 1951(a), 2 and 3551 *et seq.*; brandishing one or more firearms during crimes of violence, 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 2 and 3551 *et seq.*; possession of a firearm by a felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 3551 *et seq.*; discharging one or more firearms during crimes of violence, 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(c)(1)(C)(i), 2 and 3551 *et seq.*; firearm-related murder, 18 U.S.C. §§ 924(j)(1), 2 and 3551 *et seq.*; and possession of ammunition by a felon, 18 U.S.C. §§ 922(g)(1), 924(A)(2) and 3551 *et seq.* ECF 40.

On May 8, 2017, the Defendant filed motions, *inter alia*, to dismiss the alleged violations of 18 U.S.C. § 924(c) for failure to state a claim; and to suppress evidence recovered from the Defendant's Residence by NYS parole officers pursuant to a parole arrest warrant on June 10, 2016. ECF 61; ECF 62. The Defendant supplemented his motions on September 22, 2017, seeking to suppress evidence

seized from his apartment pursuant to the July 8, 2016 federal search warrant, based upon a purported deliberate or reckless error under *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

On November 1, 2017, the Court issued a decision: (1) denying the Defendant's motion to dismiss the 924(c) charges; (2) ordering the conduct of a limited hearing concerning "whether the seizure of the Defendant's cellphone by New York State parole officers was rationally and reasonably related to the parole officers' duties; and (3) denying the motion to suppress the evidence seized pursuant to the July 8, 2018 federal search warrant. ECF 84.

On January 8, 2018, Judge Shields conducted a hearing, ECF 90, and issued a Report and Recommendation ("R&R") regarding the cellphone on January 16, 2018. ECF 91. On January 29, 2018, then-counsel to the Defendant Kevin Keating filed objections to the R&R. ECF 96. The Government responded on February 6, 2018. ECF 98.

On February 17, 2018, the Court issued a Memorandum of Decision and Order (the "Order"), denying the Defendant's motion to suppress the evidence seized from the cellphone. ECF 101.

On April 27, 2018, the Defendant's current counsel orally argued for reconsideration of the Order, ECF 110, which the Court denied.

On August 14, 2018, the Defendant brought the following motions, which are presently before the Court, seeking:

- Suppression of evidence seized from the Rental Van located on March 26, 2016 by the SCPD near the crime scene at 147 Smith Road, Lake Grove, New York (the "Lake Grove Residence");

- Suppression of evidence seized by the SCPD pursuant to an April 15, 2016 New York State Supreme Court search warrant, issued as to the Rental Van and its contents;

- Suppression of evidence seized from the Roof Cellphone;

- Suppression of evidence seized pursuant to three federal search warrants issued on July 8, 2016 for the Defendant's Residence, the Roof Cellphone, and the Gmail Account;

- Suppression of evidence seized pursuant to a fourth search warrant issued July 21, 2016 for the Parole Cellphone;

- Suppression of evidence seized pursuant to the three July 8, 2016 federal search warrants based upon claimed overbreadth and lack of particularity;

- Reopening of the hearing concerning the Parole Cellphone;

- Dismissal of all Section 924(c) firearms charges (Counts 3, 6, 9, 13, 16, 19, 22, 25 and 29);

- To adopt all prior motions filed on behalf of the Defendant's prior attorneys.

ECF 131.

On September 12, 2018, the Government filed a response arguing that the Court should deny the Defendants' motions without a hearing. ECF 137.

## II. DISCUSSION

### A. THE MOTIONS TO SUPPRESS

An evidentiary hearing on a motion to suppress "ordinarily is required if the moving papers are sufficiently definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir.1992) (citations and quotations omitted). A defendant seeking a hearing on a suppression motion bears the burden of showing the existence of disputed issues of material fact. *See id.* at 338. A district court is not required to hold an evidentiary hearing if the defendant's "moving papers did not state sufficient facts which, if proven, would have required the granting of the relief requested[.]" *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir.1969). Further, a court need not hold an evidentiary hearing when the "defendant's statements are general,

conclusory or based on conjecture." *United States v. Viscioso*, 711 F.Supp. 740, 745 (S.D.N.Y.1989).

For the following reasons, the Court grants the Defendant's motion for a suppression hearing regarding the evidence seized from the Rental Van and the Roof Cellphone. The Court denies the Defendant's remaining motions.

**1. As to the Suppression of Evidence Seized from the Rental Van.**

*a. The Defendant's Position*

On March 26, 2016, SCPD searched the Rental Van without a warrant. The Defendant argues that SCPD lacked sufficient probable cause, and that a hearing is necessary to determine all of the relevant facts surrounding the warrantless search of the vehicle. According to his version of the events, SCPD arrested him after he parked the Rental Van in a public area, after which SCPD searched the vehicle. ECF 132-1 ¶ 3. The Defendant further contends that the facts set forth in Callahan's affidavit reporting the events underlying the seizure fail to establish probable cause. ECF 131-1 ¶ 5.

*b. The Government's Position*

The Government contends that SCPD searched the Rental Van while looking for the Defendant after the reported burglary of the Lake Grove Residence. According to the Government, the search of the Rental Van occurred as follows:

> At approximately 7:45 p.m., a downstairs neighbor called 911 after hearing someone in John Doe No. 1's 2nd-floor apartment while he was still hospitalized. Uniformed officers arrived and at approximately 7:58 p.m., they observed a black male wearing a black-and-white, hooded sweatshirt, jump down off an overhang from the 2nd floor, and flee into nearby woods . . . .
> Before the perpetrator fled, he dropped a cellphone on the roof with the number (718) 350-0346 (the "Roof Cellphone"), which was subsequently linked to ROBINSON. See GX F. He also dropped a hat that fell onto the ground when he fled (laboratory analysis later identified ROBINSON's DNA in the hat). See GX G.

At approximately 8:03 p.m., a neighbor reported that prior to the burglary attempt, a black male matching the same description had been acting suspiciously and driving a black van in the neighborhood with the license plate number "M23 GDW."

At approximately 8:23 p.m., SCPD Officer David Vlacich located a 2016 black Chrysler rental van with license plate number M23 GCW (i.e., only one letter off from the number given by the neighbor), which is the subject of the current motion (the "Rental Van" or the "Van"). The Van was parked in a Subway restaurant lot, less than 100 feet from the Lake Grove Residence. The Van had tinted windows that prevented Officer Vlacich from seeing inside. Officer Vlacich opened the unlocked rear hatch of the Van to see if anyone was hiding in the Van. Officer Vlacich observed a rental agreement (See GX H), which he retrieved in order to verify ownership of the unlocked Van. The keys for the unlocked Van were on top of the driver's side front tire.

ECF 137 at 5–6.

Based on these facts, the Government contends that: the Defendant has not satisfied his initial burden of alleging facts sufficient to establish an expectation of privacy and thus standing, pursuant to *Byrd v. United States*, 138 S.Ct. 1518 (2018), as to the Rental Van; the SCPD's good faith in following pre-*Byrd* Second Circuit precedent requires denial of suppression; there was clear probable cause and thus, pursuant to the automobile exception, a warrant was not required to search the Rental Van; exigent circumstances justified a search of the Rental Van because police were searching for a violent, dangerous fugitive; and the items in the Rental Van would have been inevitably discovered as public safety required that police inventory and safeguard the unlocked, overdue rental vehicle.

c. *Discussion*

The Court finds that resolution of this motion to suppress turns on a disputed factual matter, namely, the circumstances under which the SCPD discovered and searched the Rental Van, thus requiring a suppression hearing.

In *Byrd*, the Supreme Court held that "the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise

reasonable expectation of privacy." *Byrd*, 138 S.Ct. at 1531. Pursuant to this holding, the Defendant contends that he has standing because he drove the Rental Van with the lessor's permission the night the Vehicle was searched. ECF 131-1 ¶ 3. The Government responds that *Byrd* only applies to drivers of rental cars who retain possession and/or control the vehicle. Therefore, the Government argues that the Defendant lacked a reasonable expectation of privacy in the Rental Van because he was neither driving nor near the Rental Van when it was searched. The Government further argues that no Fourth Amendment standing exists because: (1) the Rental Van was overdue; (2) it was sitting unlocked with the keys on top of the front tire where anyone could access them; and (3) the Defendant did not have a valid driver's license. ECF 137 at 13.

The Court finds that *Byrd* is pertinent to, but not dispositive of, the standing determination. Although the proper construction of the decision is a matter of first impression in the Second Circuit, the Court agrees with other circuits which "read *Byrd* as indicating, at a minimum, that privacy expectations in rental vehicles are not subject to easily articulated bright-line rules." *United States v. Long*, No. 16-1419, 2018 WL 4936379, at *2 (8th Cir. Oct. 12, 2018). The Court gleans no language from *Byrd* setting out the borders of unauthorized drivers' privacy expectations, beyond establishing the requirement that any such expectation can only come from "lawful possession and control" of the vehicle. *Byrd*, 138 S. Ct. at 1528–29.

With this in mind, the Court rejects the Government's arguments to the extent that it claims that *Byrd* only applies to searches that occur while someone is driving the rental vehicle. Although the Government's position is not very clear, it appears that it believes the phrase "a *driver* in lawful possession or control of a rental car" to exclude parked cars. ECF 137 at 13 (emphasis added). This is not a proper interpretation of *Byrd*. The Supreme Court centered its decision around the right of those who maintain lawful possession or control of property to exclude others, and the

legitimate expectation of privacy that arises by virtue of the right to exclude. *Byrd*, 138 S. Ct. at 1527. The Supreme Court elaborated that it "sees no reason why the expectation of privacy that comes from lawful possession and control and the attendant right to exclude would differ depending on whether the car in question is rented or privately owned by someone other than the person in current possession of it." *Id.* at 1529. It stands to reason that the Supreme Court's logic remains the same, regardless of whether the rental car is parked or on the road. Just as "an unauthorized driver in sole possession of a rental car would be permitted to exclude third parties from it, such as a carjacker" while on the road, they retain that expectation when they park the car. *Id.* at 1529–30.

Generally speaking, drivers do not lose their reasonable expectation of privacy in the parts of the car outside of the plain view of the public merely by parking the car. *See, e.g.*, *United States v. $277,000.00 U.S. Currency*, 941 F.2d 898, 901 (9th Cir. 1991) (holding defendant maintained reasonable expectation of privacy in car parked in another's driveway); *United States v. Mulligan*, 488 F.2d 732, 737 (9th Cir. 1973) (finding defendant maintained reasonable expectation in car parked on another's property for two months); *United States v. Cresta*, 592 F. Supp. 889, 905 (D. Me. 1984) (explaining that rental car lessees "had a possessory interest which. . . . entitled them to a reasonable expectation of privacy at the time the vehicles were seized, parked and empty, in the parking lot of [a motel]."). Nothing in *Byrd* hints at a departure from this principle in cases involving unauthorized rental car users. Therefore, the Government cannot defeat suppression simply because the Defendant was not physically in the vehicle at the time of the search.

Further, the Court rejects the Government's claim that the Defendant's conduct terminated the rental agreement, so that he lacked a reasonable expectation of privacy in the Rental Van. Just as in *Byrd*, "the Government fails to explain what bearing [these] breach[es] of contract, standing

alone, ha[ve] on expectations of privacy in the car." 138 S. Ct. at 1529. The unauthorized driver provision and the unlicensed driver provision are exactly the sort that the Supreme Court explained "do not eliminate an expectation of privacy," because they merely "concern[s] risk allocation between private parties." *Byrd*, 138 S. Ct. at 1530. The provision regarding use for an illegal purpose, as the Government concedes, puts the cart before the horse because its trigger would first require the government to prove the commission of the crime before obtaining the admission of the evidence.

The remaining explanations provided by the Government for the Defendant's supposed lack of standing entail disputed factual issues, which require a hearing. The Government claims the Defendant was not in lawful possession of the Rental Van, because: (1) the Rental Van was overdue; (2) it was sitting unlocked with the keys on top of the front tire where anyone could access them; (3) the Defendant did not have a valid driver's license; and (4) the Defendant was apprehended walking away from the crime scene location and the Rental Van, just over a mile from the Rental Van. As the Defendant's reasonable expectation of privacy in the car did not evaporate by virtue of the mere fact that he parked and exited the vehicle, the Government can only defeat his standing to challenge the search by establishing that he relinquished lawful possession or control of the vehicle by way of abandonment, or some other means.

These issues are questions of fact normally entitled to a suppression hearing, because they relate to the mental state of the Defendant and require credibility assessments regarding which side presented the most accurate accounting of events. *See United States v. Lee*, 916 F.2d 814, 818 (2d Cir. 1990) (explaining that abandonment is a "necessarily factual" inquiry "focus[ed] on the intent of the person who is purported to have abandoned the property"); *United States v. Gruttadauria*, 439 F. Supp. 2d 240, 249 (E.D.N.Y. 2006) (referring motion to suppress to a magistrate judge for

a suppression hearing where "disputed issues of fact" existed based on defendants affidavit challenging facts underlying the government's standing arguments); *United States v. Gerena*, 662 F. Supp. 1265, 1270 (D. Conn. 1987) (finding the defendants "entitled to a hearing" where they "alleged colorable standing claims"). The Defendant denies the Government's allegations, which means that the Court cannot decide whether the Defendant abandoned the Rental Van, without first making a credibility determination regarding the circumstances underlying the search.

Lastly, the Court disagrees with the Government that the good faith exception to the Exclusionary Rule requires denial of suppression without an evidentiary hearing. While it acknowledges the good faith exception provides for an objective analysis, *Davis v. United States*, 564 U.S. 229, 232, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), the Court finds a hearing warranted here, because material factual disputes exist regarding the circumstances underlying the search. Of importance, this case also bears a crucial distinction from *Byrd*, where the officers discovered the driver was an unauthorized user of the rental car *before* the search. *See United States v. Byrd*, No. 16-1509, 2018 WL 3750932, at *1 (3d Cir. Aug. 8, 2018). Here, the SCPD officers allege they entered the Rental Van "to ascertain whether the suspect was present in the vehicle" and as a "safety precaution to check for occupants," ECF 131-6 at 4; ECF 131-10 at 7, and did not discover the Defendant's status as an unlisted driver of the vehicle until afterwards. The Court is unsure that the Government will establish that the SCPD officers acted based on an objectively reasonable reliance on *United States v. Smith*, 621 F.2d 483 (2d Cir. 1980) and *United States v. Lyle*, 856 F.3d 191 (2d Cir. May 9, 2017).

Therefore, the Court grants the Defendant's motion for a suppression hearing regarding the warrantless seizure of evidence from the Rental Van.

**2. As to the Suppression of Evidence Seized by the SCPD Pursuant to the April 15, 2016 New York State Supreme Court Search Warrant.**

The Defendant challenges the April 15, 2016 warrant issued by the Supreme Court of New York on the grounds that the warrant was (1) overbroad and failed to particularly describe the specific criminal offenses for which police established probable cause; and (2) based upon false and misleading information requiring suppression of the evidence seized. The Court denies these motions.

*a. As to the Overbreadth and Lack of Particularity Challenges.*

The Defendant argues that the warrant "lacks particularity because it fails to identify any crime, and, instead, mentions that Calla[h]an's Affidavit provided proof that there is probable cause for believing that certain property . . . has been used to commit an offense against the laws of this State and another State." ECF 131-1 ¶ 12. According to the Defendant, such language is impermissibly broad because it described neither the precise items to be seized nor the possible crimes involved. *Id.* The Government responds that although the warrant itself did not identify the criminal statutes in relation to which evidence was sought, it was nevertheless clear from the warrant and the related affidavit, which was incorporated and attached thereto, for what crimes the search was being undertaken. ECF 137 at 26–27.

The Warrants Clause protects against 'a general, exploratory rummaging in a person's belongings.'" *United States v. Cioffi*, 668 F.Supp.2d 385, 390 (E.D.N.Y.2009) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). "Its overarching purpose is to ensure that 'those searches deemed necessary should be as limited as possible.'" *Cioffi*, 668 F.Supp.2d at 390 (quoting *Coolidge*, 403 U.S. at 467, 91 S.Ct. 2022). "To achieve its goal, the Warrants Clause requires particularity and forbids overbreadth." *Id.*

"Particularity is the requirement that the warrant must clearly state what is sought." *Cioffi*, 668 F.Supp.2d at 390 (citation and quotation marks omitted). "Particularity" concerns arise when a warrant's description of the place to be searched or the items to be seized "is so vague that is fails reasonably to alert executing officers to the limits of their search authority." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir.2011). The Second Circuit has specified three components of the particularity requirement: (1) the "warrant must identify the specific offense for which the police have established probable cause"; (2) the "warrant must describe the place to be searched"; and (3) the "warrant must specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (citation omitted). Thus, "a warrant satisfies the particularity requirement when it sufficiently identifies and describes the items to be searched and seized and links that evidence to the specific criminal activity being investigated." *United States v. Juarez*, No. 12-CR-59, 2013 WL 357570, *3 (E.D.N.Y. Jan. 9, 2013).

Additionally, a warrant need not describe the items to be seized in such detail as to eliminate the officer's discretion completely. *See United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990) (Fourth Amendment "not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within" category described in warrant). To satisfy the "particularity" requirement, a warrant need only "be sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize." *United States v. Liu*, 239 F.3d 138, 140 (2d Cir.2000) (quotation marks, citation, and alterations omitted). "The level of specificity required by the Fourth Amendment depends on many factors. The nature of the crime, for example, may require a broad search." *United States v. Dupree*, 781 F. Supp. 2d 115, 149 (E.D.N.Y. 2011).

Applying these principles, the Court finds that the warrant violates the particularity requirement by failing to list the specific offenses allegedly committed. The parties agree that the four corners of the warrant itself do not list the crimes for which SCPD identified probable cause. Indeed, the warrant only refers to "an offense against the laws of this State or another State" and "crime under investigation." ECF 131-2. The absence of any language particularizing the relevant crimes makes the warrant facially invalid. *See Galpin*, 720 F.3d at 447 (finding warrant violated Fourth Amendment's particularity requirement, "insofar as the warrant generally authorized officers to search [the defendant's] physical property and electronic equipment for evidence of violations of 'NYS Penal Law and or Federal Statutes'").

The only remaining question then is whether the warrant sufficiently attached the Callahan Affidavit, so that the affidavit became incorporated by reference. "Resort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it." *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992); *see also United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) ("[C]ourts may no longer rely on unincorporated, unattached supporting documents to cure an otherwise defective search warrant, the warrant fails for lack of particularity."). In this regard, the Government points to language in the warrant stating, "Proof, by affidavit, having been this day made before me, by Detective Callahan, Shield No.1248," as well as the fact that the affidavit was attached to the warrant. ECF 131-2.

While the Court finds these facts do support the Government's position, the cursory citation of the Callahan Affidavit is insufficient. The mere "recitation" that a warrant was "issued upon the basis of an application and affidavit . . . does not direct the executing officers to refer to the affidavit for guidance concerning the scope of the search and hence does not amount to incorporation by reference." *George*, 975 F.2d at 76; *United States v. Cohan*, 628 F. Supp. 2d 355, 363 (E.D.N.Y.

2009) ("[T]he Government cannot rely on language in a warrant simply referencing the underlying affidavit to satisfy the particularity prong of the Fourth Amendment; rather, it must attach the affidavit to the warrant and incorporate it by reference using deliberate and unequivocal language."). Therefore, the fact that the Callahan Affidavit may have adequately described the offenses committed cannot save the warrant. *Cf. Groh v. Ramirez*, 540 U.S. 551, 557, 124 S. Ct. 1284, 1289, 157 L. Ed. 2d 1068 (2004) ("The fact that the *application* adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents.").

As a result, the Court finds that the warrant violates the Fourth Amendment's particularity requirement. However, this finding does not end the Court's inquiry. The Court must address whether admission is nonetheless appropriate, as a violation of the Fourth Amendment does not necessarily result in the application of the exclusionary rule. Application of the exclusionary rule depends on the "efficacy of the rule in deterring Fourth Amendment violations in the future" as well as a determination that "the benefits of deterrence . . . outweigh the costs." *Herring v. United States*, 555 U.S. 135, 141, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) Moreover, "[t]he extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct." *Id.* at 143. Thus, in deciding to suppress evidence, courts look to whether "police conduct [is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id*. at 144. Accordingly, when a government agent acts with "an objectively reasonable good-faith belief that their conduct is lawful," or when their conduct involves only "simple, isolated negligence," exclusion simply "cannot pay its way." *Davis*, 564 U.S. at 257.

In light of this principle, courts have recognized that evidence obtained by government agents "in objectively reasonable reliance" on a warrant subsequently invalidated by a reviewing court is not generally subject to exclusion. *See United States v. Falso*, 544 F.3d 110, 125 (2d Cir.2008) (citation and quotation marks omitted). When a government agent genuinely believes that he or she has obtained a valid warrant from a magistrate and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, "and thus nothing to deter." *United States v. Leon*, 468 U.S. 897, 920–21, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

Here, the good faith exception applies because "a reasonably well trained officer is not chargeable with knowledge that this search was illegal in the particular circumstances before us. While [the Court] may no longer rely on unincorporated, unattached supporting documents to cure a constitutionally defective warrant, those documents are still relevant to [the] determination of whether the officers acted in good faith, because they contribute to [the Court's] assessment of the officers' conduct in a particular case." *Rosa*, 626 F.3d at 64. Although not explicitly incorporated by reference in the warrant, the Callahan Affidavit was nonetheless attached to the warrant, and clearly elucidated that the crimes under investigation were Criminal Trespass and Burglary. ECF 137-15 at 6. Moreover, Callahan was both the affiant and executing officer, diminishing the risk of a general search, due to Callahan's ability to rely on his own knowledge of the investigation in executing the warrant. Further, the warrant instructed that the items to-be-seized were limited to "evidence linking the use of this vehicle to the crime under investigation," *id.* at 1, and the Defendant makes no allegations that the SCPD seized items unrelated to the crimes described in the Callahan Affidavit.

Based on these facts, the Court finds suppression an inappropriate remedy for the Fourth Amendment violation at issue. *See, e.g.*, *United States v. Lustyik*, 57 F. Supp. 3d 213, 226–27

(S.D.N.Y. 2014) (denying suppression of evidence seized pursuant to warrant that failed to list target offense where application provided enough detail to limit the search to the relevant crimes); *United States v. Purcell*, No. 18-CR-81, 2018 WL 4378453, at *5 (S.D.N.Y. Sept. 13, 2018) (same); *United States v. Alston*, No. 15-cr435, 2016 WL 2609521, at *5 (S.D.N.Y. Apr. 29, 2016) (same); *United States v. Romain*, No. 13-CR-724, 2014 WL 6765831, at *6–7 (S.D.N.Y. Dec. 1, 2014) (same); *United States v. Nguyen*, No. 13-CR-6044, 2014 WL 1512030, at *17–18 (W.D.N.Y. Apr. 7, 2014) (same), *report and recommendation adopted*, 2014 WL 1795045 (W.D.N.Y. May 6, 2014).

The Defendant's only objection to the application of the good faith exception is unpersuasive. The Defendant claims that the Government cannot rely on the doctrine, because the SCPD knowingly misled the issuing judge. ECF 144 ¶ 27 (citing *Falso*, 544 F.3d at 125). As the Court will explain in the following section, it finds that this argument lacks merit. Therefore, the Court will not rely on it to suppress evidence due to the warrant's lack of particularity.

### b. As to the Alleged Material Omissions in the Supporting Affidavit.

The Defendant also challenges the warrant on the ground that the Callahan Affidavit deliberately misled the issuing judge by omitting information material to the probable cause determination. ECF 131-1 ¶ 15. Specifically, the Defendant faults the affidavit for failing to disclose that SCPD already conducted a warrantless search of the Rental Van, and recovered many of the items sought by the affidavit. *Id.* ¶¶ 15–18.

Under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the

Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. at 155–56. To be entitled to a *Franks* hearing, the defendant's attack on material contained in the search warrant:

> must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactory explained. Allegations of negligence or innocent mistake are insufficient.

*Id.* at 171. Therefore, "[t]o invoke the *Franks* rule, a defendant is required to show: (1) 'that there were intentional and material misrepresentations or omissions' in the warrant affidavit, and (2) that the 'alleged falsehoods or omissions were necessary to the . . . probable cause finding.'" *United States v. Mandell*, 752 F.3d 544, 552 (2d Cir.2014) (quoting *United States v. Awadallah*, 349 F.3d 42, 64–65 (2d Cir.2003)).

Notably, "[t]here is . . . a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171, 98 S.Ct. 2674. The standard for entitlement to a *Franks* hearing is high, *see Rivera v. United States*, 928 F.2d 592, 604 (2d Cir.1991), and requires a "substantial preliminary showing" that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included in the affidavit for the search warrant. *Franks*, 438

U.S. at 155–56, 98 S.Ct. 2674; *see also United States v. Mandell*, 710 F.Supp.2d 368, 372 (S.D.N.Y.2010) ("Hearings under *Franks* are not freely granted.").

First, and foremost, the Defendant's motion fails with regards to the alleged omission of SCPD's search of the glove compartment, because the warrant made sufficient disclosures to the issuing judge. In relevant part, the Callahan Affidavit states:

> The uniformed officer determined the vehicle was unlocked and opened the rear hatch of the van to ascertain whether the suspect was present in the vehicle. . . . Located in plain view inside the vehicle was a cellular telephone a cloth, dark in color, and a car rental agreement for the vehicle. This rental agreement provided investigative leads which established a woman had rented the car for a friend of hers known to her only as "Tyrone" and that he had been using the vehicle.

ECF 131-6 at 4–5. The Court finds that this language made clear to the issuing judge that the SCPD searched the interior of the vehicle and seized some of its contents.

As for the remaining allegations, the Defendant puts forth no evidence regarding the intent underlying errors or omissions, beyond the mere fact that they occurred. While not dispositive, the absence of any such substantiation weighs against the Defendant's claims that Callahan made these misstatements knowingly and intentionally, or with reckless disregard for the truth. *See United States v. Gasperini*, No. 16-CR-441, 2017 WL 3038227, at *6 (E.D.N.Y. July 17, 2017), *aff'd*, 894 F.3d 482 (2d Cir. 2018) (denying *Franks* hearing where defendant "offer[ed] no basis to conclude that this omission was designed to mislead, or made in reckless disregard of its potential to mislead, the magistrate"); *United States v. Persico*, No. 10-CR-147, 2012 WL 2017224, at *5 (E.D.N.Y. June 4, 2012) (denying *Franks* hearing where defendant did "not provide[] adequate substantiation for his claim" that affiant knew that statements were false). Viewing the contested statements in

context, the Defendant has not made a substantial preliminary showing, as required by *Franks*, justifying a hearing.

Regarding the DNA "swab," the Callahan Affidavit provides that "the vehicle sought to be searched has been seized by the Suffolk County Police Department. *Id.* at 5. Given that the Callahan Affidavit disclosed that a search of the vehicle already occurred, and that the vehicle was in police custody, this is not the sort of omission that would entitle the Defendant to a hearing. *See United States v. Vilar*, No. 05-CR-621, 2007 WL 1075041, at *27 (S.D.N.Y. Apr. 4, 2007) ("All storytelling involves an element of selectivity, so it is not shocking that every affidavit will omit facts which, in retrospect, seem significant. Thus, courts have recognized that *Franks* claims based on omissions are less likely to justify suppression than claims of intentionally or recklessly false assertions.").

As for the errors in the return of the warrant, Detective Callahan affirmed that, on April 18, 2016, he obtained the Van Cellphone "by making search . . . designated in the said warrant for the (property)(person) therein described, and found of the said property the articles described in the following inventory" and that the Van Cellphone was "taken . . . by virtue of the within Search warrant." ECF 137-16 at 1. The Court agrees with the Defendant that this statement is untrue, since the Government concedes that the SCPD seized and took inventory of the phone pursuant to a warrantless search on March 26, 2016. *See, e.g.*, ECF 137 at 30 ("[T]he affidavit describes the discovery of the van on March 26, 2016,[and the] location of the personal property items in plain view inside the van (including the Van Cellphone)[.]"), 31 ("[T]he Rental Van was searched on March 26, 2016 and the Van Cellphone was recovered at that time[.]"), 38 ("[T]he Van Cellphone was recovered on March 26, 2016 as described above."), 40 ("The Van Cellphone was properly inventoried on March 26, 2016 following its seizure.").

However, the Court disagrees with the Defendant that this untruth rises to the level of a deliberate falsehood or reckless disregard for the truth. *See United States v. Waker*, 534 F.3d 168, 171 (2d Cir. 2008) ("In general, minor errors in an affidavit are not cause for invalidating the warrant that it supports."); *United States v. Martin*, 426 F.3d 68, 73 (2d Cir. 2005) ("[E]very statement in a warrant affidavit does not have to be true."). As the Court explained, Callahan already disclosed to the issuing judge that a warrantless search of the Rental Van occurred, during which SCPD discovered the Van Cellphone. Given this disclosure, the statement on the return, at best, constitutes a clerical error stemming from filling out a standardized form.

Therefore, the Court denies the motion to suppress evidence seized by the SCPD pursuant to the April 15, 2016 warrant in its entirety.

### c. *As to the Final Disposition of the Motion.*

The Court observes some degree of overlap between the Defendant's motion regarding the warrantless search of the Rental Van and his motion relating to the April 15, 2016 warrant. Although the Defendant does not appear to argue that the Callahan Affidavit contained deliberate falsehoods regarding the circumstances under which the SCPD discovered the Rental Van, the suppression hearing may touch on topics discussed in the Callahan Affidavit. As a result, the Court will reserve final judgment on this motion pending the outcome of the suppression hearing.

However, the Court instructs the Defendant that this decision is not an invitation to turn the suppression hearing into a *Franks* hearing about the April 15, 2016 warrant. In this regard, the hearing should be strictly limited to the issues raised in the Defendant's motion regarding the warrantless search of the Rental Van.

### 3. As to the Suppression of Evidence Seized from the Roof Cellphone.

The Defendant seeks suppression of all evidence obtained from the Roof Cellphone. According to the Defendant, he left the Roof Cellphone inside the Rental Van, and thus could not have abandoned it on the roof of the Lake Grove Residence. ECF 132 ¶ 4. As a result, the warrantless seizure and search of the phone violated his Fourth Amendment rights, pursuant to *Riley v. California*, 134 S.Ct. 2473 (2014). ECF 131-1 ¶ 53. The Government responds that the Defendant lacks standing to challenge the search of the Roof Cellphone, because: (1) he, in fact, abandoned it; and (2) he lacks standing to challenge searches of the Rental Van's contents. ECF 137 at 35–36. The Government further contends that, even if the Defendant maintained a reasonable expectation of privacy in the Roof Cell Phone, its contents are nonetheless admissible pursuant to the independent source doctrine, because federal agents ultimately sought and obtained a search warrant. *Id.* at 36–37. Regarding the federal warrants, the Defendant claims that the federal authorities only secured the warrants after obtaining the results of the SCPD's unlawful forensic examination of the Roof Cellphone, so that the evidence must be suppressed as "fruit of the poisonous tree." ECF 131-1 ¶ 53.

The Court finds that a hearing is required, because a disputed material fact exists, namely, the location of the Roof Cellphone at the time of its recovery. The Court previously explained why the Government's standing arguments regarding the search of the Rental Van require an evidentiary hearing. *See supra* II.A.1.c. The Government's remaining justifications for searching the Roof Cellphone rely on its contention that SCPD recovered the phone at the roof of the Lake Grove Residence, ECF 137 at 36–37, a fact to which the Defendant makes a non-conclusory objection. ECF 132 ¶ 4. Indeed, the only facts put forward in the application for the federal warrant as probable cause to search the Roof Cellphone relate to the location of the phone's recovery. ECF

131-10 ¶¶ 9–12; *see also* at ECF 137 at 44 ("Second, the Roof Cellphone was found at the scene of a home for which there was probable cause to believe the defendant had invaded not once, but twice. . . . Thus, there was probable cause to believe that the Roof Cellphone was associated with criminal activity"), *id.* ("Third, in light of the fact that the Roof Cellphone . . . was possessed during and in relation to the second invasion of the Lake Grove Residence, there is clear probable cause to believe that the Roof Cellphone contained evidence not only of criminal activity but also of drug trafficking, home invasion and firearms offenses in particular.").

As a result, a hearing is necessary to determine whether the independent source doctrine applies, because it is an exception to the fruit of the poisonous tree principle limited to evidence "obtained on the basis of information unconnected to an earlier Fourth Amendment violation." *United States v. Gigliotti*, 145 F. Supp. 3d 203, 211 (E.D.N.Y. 2015); *see also United States v. Ghailani*, 743 F. Supp. 2d 242, 250 (S.D.N.Y. 2010) (explaining that exceptions to the fruit of the poisonous tree doctrine analyze whether the evidence was obtained "by means sufficiently distinguishable to be purged of the primary taint"). In other words, the Government cannot rely on the federal warrant to excuse the warrantless search of the Rental Van, when the facts underlying the warrant are the same contested facts surrounding the warrantless search.

Therefore, the Court grants the Defendant's motion for a suppression hearing regarding the evidence seized from the Roof Cellphone.

### 4. As to the Suppression of Evidence Seized Pursuant to the Federal Search Warrants.

The Defendant challenges the evidence seized pursuant to the federal warrants on the grounds that: (1) the affidavits supporting the July 8, 2016 and July 21, 2016 federal warrants contained materially false statements and omissions misleading the magistrates; (2) the affidavit submitted in support of the July 8, 2016 warrants lacked facts sufficient to establish probable cause

regarding the federal drug trafficking charges; (3) the affidavit submitted in support of the July 8, 2016 warrants lacked sufficient facts to establish probable cause that the Defendant's Residence, cellphone, or e-mails contained evidence of the crimes of drug trafficking, home invasion and firearms offenses; and (4) the July 8, 2016 warrants failed to particularize the property being sought. The Court grants the Defendant's request for a hearing regarding certain allegedly false statements in the affidavits but denies the rest of the Defendant's motions.

*a. As to the Alleged Material Omissions in the Supporting Affidavits.*

The Defendant argues that Judge Shields and Judge Locke signed the July 8, 2016, and July 21, 2016 warrants, respectively, based upon materially false statements and omissions in the supporting affidavits. The Court finds that the Defendant made a substantial showing in support of a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) for his claims that he did not abandon the Roof Cellphone, but not his other allegations.

With regards to the Roof Cellphone, the Defendant argues the federal affidavits falsely stated the location where the SCPD recovered the phone. According to the federal affidavits, the SCPD arrived at the Lake Grove Residence to investigate a reported burglary, observed the Defendant near the residence, and ordered him to stop. ECF 131-10 ¶ 10. At this point, the Defendant fled, and was later apprehended about ¾ of a mile away. *Id.* In conjunction with the burglary investigation, SCPD found the phone on the roof of the Lake Grove Residence, near the apparent point of entry for the burglary. *Id.* ¶ 12. The Defendant contends that these statements in the Licinsky Affidavit are false, because he left the Roof Cellphone inside the Rental Van, and it was unlawfully seized by SCPD pursuant to their warrantless search. ECF 132 ¶ 4.

These are the sort of objections that require a *Franks* hearing. The Court finds that the Defendant provided sufficient non-conclusory objections, supported by a sworn affidavit, to the

portion of the warrant affidavit claimed to be false. *See Franks*, 438 U.S. at 171 ("They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."). Further, these objections are material to the probable cause determination, because the only facts the Government put forward in support of the Magistrate Judges' probable cause finding relate to the circumstances of the phone's recovery. *See infra* II.A.4.b.iii. Put simply, if the SCPD in fact recovered the Roof Cellphone pursuant to a warrantless search of the Rental Van, and not on the roof of the Lake Grove Residence, the Liscinsky Affidavit would not just contain blatant untruths, but those falsities would also have been essential to the issuance of the warrant. Therefore, the Fourth Amendment mandates that "the defendant is entitled . . . to his hearing. Whether he will prevail at that hearing is, of course, another issue." *Franks*, 438 U.S. at 172.

The Court, however, is not persuaded by the remainder of the Defendant's challenges to the federal warrants. Each objection either: (1) fails to make a substantial preliminary showing as to intent; or (2) relates to facts immaterial to the probable cause determination. *See supra* II.A.2.b. The Court will address each of these objections in turn.

First, the Defendant argues the federal affidavits reported that "downstairs tenant at 147 Smith Road, Lake Grove, New York, called SCPD stating that someone had broken into the upstairs apartment," whereas his review of the 911 call "revealed that a third party had called the police, and, instead, of reporting a burglary, is heard saying, in sum and substance, 'my mother called, and said she heard noises upstairs.'" ECF 131-1 ¶ 24. The Court finds this objection immaterial. The federal affidavits allege that police responded to the call, and upon their arrival,

saw the perpetrator fleeing after having broken into the upstairs apartment. ECF 131-10 ¶ 10; ECF 131-15 ¶ 15. The exact identity of and language used by the caller is of no relevancy.

Second, the Defendant argues that the federal affidavits reported that "[a] rental agreement was obtained in the back of the van and was retrieved to verify ownership of the van" and that "the van was impounded by SCPD for verification of ownership," whereas the radio runs relating to the burglary investigation reveal that SCPD knew "Enterprise" was the verified owner of the vehicle. ECF 131-1 ¶ 25. These statements are not inconsistent. SCPD can simultaneously possess a surface level knowledge that a vehicle was registered to Enterprise, and impound that vehicle for verification of ownership. Even assuming such an inconsistency, the Defendant put forward no evidence regarding the deliberateness of the misstatement, or the materiality of this statement to the probable cause determination.

Third, the Defendant argues that the federal affidavits reported that the rental agreement "showed that Jane Doe . . . had rented the van . . . [and] Jane Doe was interviewed by SCPD authorities and admitted that she had rented the van for her friend 'Ty' and that he was supposed to give her $600 for renting the van," whereas the Callahan Affidavit characterized the conversation with Jane Doe differently: "[the] rental agreement provided investigative leads which established a woman had rented the car for a friend of hers known to her only as "Tyrone" and that he had been using the vehicle." ECF 131-1 ¶ 26. It is not clear what is inconsistent between these two statements. The Court assumes that the Defendant is attempting to argue that, because the Callahan Affidavit did not mention the promised $600 payment, the federal affidavits lied about the existence of such arrangements. However, nothing in the language of the Callahan Affidavit forecloses the latter characterization. To the extent that the Defendant's challenge relates to the

fact that the federal statements refer to "Ty," while the Callahan Affidavit refers to "Tyrone," the Court agrees with the Government that there is no material difference between these statements.

Fourth, the Defendant argues the federal warrants falsely stated that "[p]ursuant to a search warrant obtained in Suffolk County Court, the van was searched and a cellphone was located," while the SCPD actually secured the Van Cellphone pursuant to a warrantless search. ECF 131-1 ¶ 27. The Government concedes that the statements in the federal arrant are erroneous, but argues that the statement was made by mistake. This error does not justify a *Franks* hearing. The Defendant provides no elaboration as to why this misstatement was deliberate and/or was necessary to the Magistrate Judges' probable cause determination. Indeed, if the federal warrant stated that the Van Cellphone was recovered in the initial search of the Rental Van and the "data" within the cellphone was recovered as a result of the state search warrant, the outcome would have been the same.

Finally, the Defendant argues that the federal affidavits deceived the Magistrate Judges into believing that the Roof Cellphone was in the custody of the SCPD at the time the July 8, 2016 warrant was approved, while it was actually in federal custody. ECF 131-1 ¶ 29. The Defendant bases this claim on a blurry photograph. ECF 131-13. The Government provided, and the Court reviewed, two clear photographs of the evidence bag, which show that the Roof Cellphone was logged into ATF custody on August 17, 2016. ECF 137-17.

Therefore, the Court will provide the Defendant with a *Franks* hearing regarding whether or not the SCPD located the Roof Cellphone at the roof of the Lake Grove Residence, but not his other allegations.

### b. As to the Probable Cause Challenges

Where a magistrate finds probable cause and issues a search warrant, "the task of a reviewing court is simply to ensure that the totality of the circumstances afforded the magistrate a substantial basis for making the requisite probable cause determination." *United States v. Rissew*, 580 Fed.Appx. 35, 36 (2d Cir.2014) (citations omitted). Reviewing courts "accord 'great deference' to a judge's determination that probable cause exists, and . . . resolve any doubt about the existence of probable cause in favor of upholding the warrant." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (quoting *Leon*, 468 U.S. at 914). Therefore, the movant bears a "heavy burden" when challenging a warrant for lack of probable cause. *Rivera*, 928 F.2d at 602.

"Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant," *Clark*, 638 F.3d at 93 (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)), "and its related concern that '[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.'" *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *see also United States v. Hoey*, No. 11-CR-337, 2014 WL 2998523, at *7 (S.D.N.Y. July 2, 2014) (same)). To that end, "[c]ourts must refrain from invalidating judicially authorized warrants based on 'hypertechincal' interpretations of affidavits." *United States v. Williams*, No. 13-CR-419, 2016 WL 4257346, at *3 (E.D.N.Y. Aug. 11, 2016) (quoting *Ventresca*, 380 U.S. at 107).

For the reasons set forth below, the Court finds that probable cause supported the issuance of the federal warrants, assuming the veracity of the facts set forth in the federal affidavits.

i. <u>As to the Probable Cause that the Defendant Was Engaged in Drug Trafficking.</u>

The Defendant claims the Licinscky Affidavit lacked sufficient facts to establish probable cause that the Defendant "was engaged in the crimes of 'conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§841 and 846.'" ECF 131-1 ¶ 31 (quoting ECF 131-10 ¶¶ 2, 31). According to the Defendant, the only evidence of alleged drug trafficking was a statement from a victim of the May 3, 2016 home invasion "that the home invaders were asking where 'the stuff' was." *Id.* ¶ 32 (quoting ECF 131-10 ¶ 16). The Defendant believes that this comment is too ambiguous to support a finding that the Defendant was trafficking narcotics, considering that other statements in the Liscinsky Affidavit show the home invaders were only interested in money, and not drugs. The Court finds these arguments unpersuasive.

The Defendant glosses over his previous drug conviction, and the multiple instances in which authorities discovered drugs on his residence. ECF 131-10 ¶¶ 7, 18. It is well-settled that these facts are relevant to establishing probable cause. *See United States v. Wagner*, 989 F.2d 69, 73 (2d. Cir. 1993) (noting that prior convictions are relevant to establishing probable cause); *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) (noting that prior narcotics conviction was relevant to establishing probable cause that defendant was involved in narcotics activity); *United States v. Pignard*, No. 06-CR-718, 2007 WL 431863, *4 (S.D.N.Y Feb. 6, 2007) (finding probable cause to search residence where defendant had history of selling drugs and threw small amount of drugs out of window).

While the Court does not believe that these facts, standing alone, would establish probable cause, they certainly put the allegations the Defendant cites in a different light. This is especially true considering that Liscinsky Affidavit accuses the Defendant of targeting the homes of drug dealers, in particular, rather than garden variety home invasions. ECF 131-10 ¶¶ 6, 9, 15. When

viewed in the context of these additional allegations, the victim statement that the Defendant asked where "the stuff" was is sufficiently definite to support the Judge Shields's probable cause finding.

ii. <u>As to the Probable Cause that the Defendant's Residence Contained Evidence of the Subject Crimes.</u>

The Defendant alleges that the Liscinsky Affidavit failed to present any facts supporting probable cause that evidence of the crime was located at the Defendant's Residence, other than Liscinsky's training and expertise. ECF 131-1 ¶ 40. According to the Defendant, an affiant's expertise, without more, cannot provide probable cause to search for evidence of criminal activity. The Court disagrees.

As the Court already explained, the Liscinsky Affidavit established probable cause that the Defendant was trafficking narcotics stolen from other drug dealers via armed robbery. *See* ECF 131-10 ¶¶ 6, 15. With this in mind, the Affidavit provides adequate support that: evidence of such activity existed at the Defendant's Residence, namely, his previous gun and drug crime convictions, *id.* ¶ 3; the Defendant was observed with potential instrumentalities of the crime (guns, zip-ties and a purported get-away car) at his residence, *id.* ¶¶ 6, 7, 14–18; and he periodically discarded them around his residence, *id.* ¶¶ 7, 14. The Liscinsky Affidavit supplemented these facts with information about the affiant's training and experience, and listed evidence typically recovered in residential searches in similar investigations. *Id.* 131-10 ¶¶ 20–21.

Therefore, this is not a situation where an affiant sought a warrant on the basis of their training and experience alone. Rather, the affiant supplemented colorable allegations that the Defendant's Residence contained evidence of the crime with observations from his experience with similar crimes. Taken together, these facts established probable cause. *See United States v. Benevento*, 836 F.2d 60, 71 (2d Cir. 1987) (finding that "a government agent's expert opinion . . . when viewed together with the other evidence in the government's affidavits" can establish

"probable cause to believe that evidence of prior criminal activity was located in [a] home"); *United States v. Morgan*, 690 F. Supp. 2d 274, 287 (S.D.N.Y. 2010) (finding probable cause for search warrant of residence where supporting affidavit contained, among other things, agent's statement that based on his experience drug traffickers often keep records related to trafficking activities in their homes).

Consequently, the Court finds this case distinguishable from those cited by the Defendant in support of his motion. In *United States v. Rios*, 881 F. Supp. 772 (D. Conn. 1995), "the government essentially conceded at the hearing that . . . [the] affidavit] . . . contain[ed] no allegations of *fact* linking [the defendant's] alleged illegal activity to his residence." *Id.* at 775. "When asked whether there was anything more in the affidavit that would indicate that [the defendant] would keep such evidence at his residence, the government responded: 'No, other than [the agent] with respect to her training and experience.'" *Id.* In *United States v. Gomez*, 652 F.Supp. 461 (E.D.N.Y. 1987), the Drug Enforcement Administration ("DEA") obtained a warrant to search the defendant's residence based on: reference to the defendant's name in a co-defendant's records of the crime; observation of a co-defendant's name in the defendant's personal telephone book; "a quantity of gold jewelry"; and an affidavit by a DEA agent stating that narcotics traffickers tend to keep at their residences proceeds and records of drug transactions. *Id.* at 462–63. After the Court found that the first three allegations provided no reason whatsoever to believe that evidence of drug trafficking would be found at her apartment, the court found the affidavit insufficient to establish probable cause because there was "nothing to connect the illegal activities with the arrested person's apartment" *Id.* at 463.

Here, the Liscinsky Affidavit provided multiple direct ties between the alleged crime and the Defendant's Residence, so that the specialized knowledge of the affiant was not the sole basis for a probable cause finding.

       iii.   As to the Probable Cause that the Roof Cellphone and Gmail Account Contained Evidence of the Subject Crimes.

The Defendant also alleges that the Liscinsky Affidavit failed to present any facts supporting probable cause that evidence of the crime was located on the Roof Cellphone and Gmail Account, other than Liscinsky's training and expertise. ECF 131-1 ¶ 41.

Putting the Defendant's *Franks* objections aside, and presuming the validity of the statements in the Liscinsky Affidavit, the Court finds that sufficient probable cause existed to search these items. According to the Liscinsky Affidavit, SCPD found the Roof Cellphone at the scene of the home invasion after the Defendant dropped it while fleeing. ECF 131-10 ¶ 11. The SCPD identified the Roof Cellphone as the Defendant's based on the presence of one or more of his pictures on the phone, including the home screen. *Id.* ¶ 12. Further, the Roof Cellphone was linked to the Gmail Account, which also appeared to belong to the Defendant. *Id.* The Liscinsky Affidavit supplemented these statements with explanations why, in his training and experience, evidence related to the crimes were likely to be found on the Cellphone and Gmail Account. *Id.* ¶¶ 21, 29–30. Although the Liscinsky Affidavit lacks facts directly alleging that the Defendant used the Roof Cellphone in connection with the crime, the fact that SCPD discovered the phone at the scene of the crime creates a sufficient factual nexus to justify the search.

"Ordinary, everyday objects such as cell phones, laptops, and cameras may take on a different character depending on the context in which they are found." *United States v. Delva*, 13 F. Supp. 3d 269, 276 (S.D.N.Y. 2014) (citing *States v. O'Brien*, 303 Fed.Appx. 948, 949

(2d Cir. 2008)). Like here, where cellphones are discovered at or near the scene of the crime, "the experience of narcotics investigators has been accepted as the basis to support such cell phone searches." *United States v. Barret*, 824 F. Supp. 2d 419, 448 (E.D.N.Y. 201); *see also United States v. Hoey*, No. 15-CR-229, 2016 WL 270871, at \*9 (S.D.N.Y. Jan. 21, 2016) ("Courts have commonly have [sic] found probable cause to search cellphones possessed by defendants arrested in connection with ongoing drug-distribution crimes based on the experience of agents familiar with narcotics trafficking that traffickers commonly use cellphones to communicate in the course of their narcotics distribution, as well as to store relevant information, including the names and contact information of suppliers, purchasers, and confederates."); *United States v. Lam*, No. 05-CR-104, 2006 WL 2864019, at \*5 (W.D.N.Y. May 23, 2006) (finding probable cause to search phone existed where the agent in application "recited the events leading to [the defendant's] arrest and stated his belief, based on his experience as a narcotics investigator, that drug traffickers frequently store relevant information in their cellular phone"), *report and recommendation adopted sub nom. United States v. Tran*, No. 05-CR-104S, 2006 WL 2884144 (W.D.N.Y. Oct. 4, 2006). Indeed, "[t]he association between narcotics trafficking . . . and cell phones has been long established—cell phones can store information and images relating to the crime and participants in the crime (that is, who bought and sold the drugs)." *Delva*, 13 F. Supp. 3d at 277.

Therefore, the Court finds that the Liscinsky Affidavit provided sufficient probable cause to support the federal warrants. Accordingly, the Court denies the motion to suppress in this, but reserves final judgment on this issue pending the outcome of the *Franks* hearing.

*c.  As to the Overbreadth and Lack of Particularity Challenges*

The Defendant claims that the federal warrants are each defective for failing to particularize the property being sought and impermissibly authorizing the seizure of property "broader than can be justified by the probable cause upon which the warrant is based." ECF 131-1 ¶ 46.

i.  As to the Particularity of the Warrants.

As a preliminary matter, the Court finds that the federal warrants were sufficiently particular. The federal warrants (1) identified the specific offenses for which probable cause existed—namely, the Subject Crimes; (2) described the places to be searched; and (3) specified the items to be seized by their relation to the Subject Crimes. *See Galpin*, 720 F.3d at 445; *United States v. Scully*, 108 F. Supp. 3d 59, 92 (E.D.N.Y. 2015). Therefore, the Court finds the federal warrants to be "sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize." *Liu*, 239 F.3d at 140.

Each of the federal warrants attached a rider that articulated the particular categories of property to be seized which "constitute evidence, instrumentalities, contraband or fruits of the Subject Crimes." ECF 131-3 at 4–5; ECF 131-4 at 4–5; ECF 131-5 at 5–6. Further, the warrant only authorized the seizure of property to the extent that it related to the home invasions, firearms, and drug trafficking activities described in the Liscinsky Affidavit. "The Fourth Amendment does not require that every item or document to be seized be specifically identified in the warrant; generic terms may be used to describe the materials to be seized." *United States v. Levy*, No. 11-CR-62, 2013 WL 664712, at *5 (S.D.N.Y. Feb. 25, 2013) (citing *United States v. D'Amico*, 734 F.Supp.2d 321, 361 (S.D.N.Y.2010)).

Indeed, the Defendant does not appear to argue that the federal warrants did not specify the items to-be-seized, but rather that the warrant authorized the seizure of *too many* items.

34

Therefore, the Court denies the Defendant's motion to suppress, to the extent it challenges the particularity of the warrants and turns to the breadth of the warrants.

## ii.   As to the Breadth of the Warrants.

The prohibition on overbreadth requires that "the scope of the warrant be limited to the probable cause on which the warrant was based." *Cioffi*, 108 F.Supp.3d at 90. "In other words, a warrant is overbroad if its 'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based." *Romain*, 2014 WL 6765831, at *7 (quoting *Galpin*, 720 F.3d at 446); *see also United States v. Pugh*, No. 1:15-CR-116, 2015 WL 9450598, at *19 (E.D.N.Y. Dec. 21, 2015) ("A warrant is overbroad if it permits a search for evidence of crimes for which there is no probable cause.").

First, the Defendant claims that the federal warrants afforded officers broad and limitless discretion when searching for and seizing property in his residence. ECF 131-1 ¶ 46. As examples, he cites the language in the warrant providing for seizure from the residence of: "[c]loth[ing] and disguises which may have been used in the" commission of the subject crime; "any tools or other items which may have been used to break into residences," such as cellphones, financial records, firearms and firearm records; "photographs, photographic negatives (developed and undeveloped);" and "any currency taken in home invasions robberies or obtained via the resale of stolen drugs." ECF 131-3 at 4–5. The Defendant faults these provisions of the federal warrants, because he claims that the Liscinsky Affidavit failed to provide any evidence that such items existed or were located in his residence. ECF 131-1 ¶ 49.

The Court finds that the authority provided by the federal warrants was coextensive with the probable cause set forth in the Liscinsky Affidavit. With regard to the "[c]loth[ing] and disguises" described in the warrant, ECF 131-3, the Liscinsky Affidavit states that a witness saw

the Defendant with camouflage bottoms, a hoodie, and something covering his face, and that the Defendant asked his girlfriend to remove items of clothing, including camouflage shorts, from his apartment. ECF 131-10 ¶¶ 9, 19. As for the "tools or other items which may have been used to break into residences," ECF 131-3, the Liscinsky Affidavit describes multiple forced home invasions by the Defendant. ECF 131-10 ¶¶ 6, 9–10. The remaining items listed by the Defendant (cellphones, financial records, photographs, firearms, etc.), all could either contain documentation of the crimes or could constitute fruits or instrumentalities of the crime. As the Court previously found that the Liscinsky Affidavit set forth sufficient facts to establish probable cause that the Defendant's Residence contained evidence of the crime, the federal warrants were not overbroad due to the inclusion of such items.

Second, the Defendant argues that the Roof Cellphone and Email Warrants provided an impermissibly broad scope regarding the nature of the property sought, and lacked any specific information to support the conclusion that such evidence of the specified crimes would reasonably be located in these items. ECF 131-1 ¶ 55–56. The Court rejects this argument, as well. The Court has already explained why the Liscinsky Affidavit sufficed to establish probable cause that the Roof Cellphone and Gmail Account contained evidence of a crime. The documents described in the warrants are types of evidence likely to be found in cellphones and emails used in conjunction with the commission of a crime.

The Defendant misstates the Government's burden by suggesting that the Liscinsky Affidavit needed to provide proof that such evidence actually existed in order to obtain a warrant to search for such documents. *See Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("In sum, probable cause does not demand any showing that a good-faith belief be correct or more likely true than false. It requires only such facts as make wrongdoing or the discovery of evidence thereof

36

probable."); *Martin*, 426 F.3d at 86 ("[P]robable cause only requires the probability, and not a prima facie showing, of criminal activity."). Indeed, the Government, for example, would not need to search for "records of Internet searches" if it already had "proof that such occurred." ECF 131-1 ¶ 15.

Lastly, the Defendant objects to the language in the Email Warrant authorizing the search for "everything" in the Gmail Account. The Defendant's objection relates to the disclosure of material necessary to facilitate the search for particular items seized by the Email warrant. *See* Fed. R. Crim. P. 41(e)(2)(B) ("[O]fficers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant.").

Such a procedure is consistent with the well-established law of this Circuit. *See United States. v. Ganias*, 824 F.3d 199, 232 (2d Cir. 2016) (en banc) (acknowledging that government may, consistent with Fourth Amendment, overseize electronically stored data when executing warrant in order to extract responsive documents); *Scully,* 108 F. Supp. 3d at 95 (finding search warrant for Yahoo email account was not overly broad or insufficiently particular where information to be seized was limited to "fruits, evidence and instrumentalities" of specific violations and conduct that gave rise to violations); *In the Matter of A Warrant for All Content and Other Information Associated with the Email Account xxxxxxx@Gmail.comMaintained at Premises Controlled by Google Inc.*, 33 F. Supp. 3d 386, 395–96 (S.D.N.Y. 2014) (collecting cases).

Therefore, the Court denies the Defendant's motion to suppress relating to the alleged overbreadth of the warrants but reserves final judgment pending the outcome of the *Franks* hearing.

**B. As to the Reopening of the Hearing Concerning the Recovery of the Parole Cellphone.**

The Defendant seeks reconsideration of the Order adopting the R&R and denying the motion to suppress evidence seized pursuant to a search by the Parole Officers. Specifically, the Defendant urges the Court to: (1) conduct a hearing to assess the credibility of two of the witnesses that testified at the January 8, 2018 suppression hearing; and (2) consider allegations submitted in his August 16, 2018 affidavit contesting many of the statements made by those witnesses. The Court denies the Defendant's motion.

### 1. As to the Timeliness of the Motion for Reconsideration.

As a preliminary matter, the Court notes that the Defendant motion for reconsideration is untimely. Local Criminal Rule 49.1 provides that: "[a] motion for reconsideration or reargument of a Court order determining a motion shall be filed and served within fourteen (14) days after the Court's determination of the original motion." Here, the Court adopted the R&R on February 17, 2018, ECF 101, and the Defendant failed to formally seek reconsideration until August 14, 2018, nearly 6 months after entry of the order. ECF 131. While the motion is patently untimely, the Court will excuse its tardiness, because the Court is sympathetic to the burdens re-assignment may have placed on his counsel. *See United States v. Santillan*, No. 13-CR-138, 2015 WL 6115865, at *1 (S.D.N.Y. Oct. 15, 2015) (reaching merits of motion to reconsider "since there would be little purpose to denying this motion on procedural grounds and requiring Defendant to raise the argument in a new motion to suppress"). Therefore, the Court will advance to the merits of the motion for reconsideration.

### 2. As to the Merits of the Motion for Reconsideration.

Neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules of this District address the proper standard for evaluating a motion for reconsideration in a criminal case.

However "[i]n the absence of an analogous criminal rule, courts in this circuit apply the standards of Local Civil Rule 6.3 of the Local Rules for the United States District Courts for the Southern and Eastern Districts of New York." *United States v. Pena Ontiveros*, No. 07-CR-804, 2008 WL 2446824, at *4 (S.D.N.Y. Jun. 16, 2008) (collecting cases).

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple[.]" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Reconsideration "is considered an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Butto v. Collecto* Inc., 845 F. Supp. 2d 491, 494 (E.D.N.Y. 2012); *Diaz v. Bellnier*, 974 F. Supp. 2d 136, 139 (E.D.N.Y. 2013). "Ultimately, however, the decision on a motion for reconsideration is committed to the sound discretion of the district court." *Gupta v. Attorney General of U.S.*, 52 F. Supp. 3d 677, 679 (S.D.N.Y. 2014); *accord In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d at 457; *Butto*, 845 F. Supp. 2d at 494 (E.D.N.Y. 2012).

For the reasons set out below, the Court reconsiders its application of clear error review to the R&R, but nonetheless denies the motion for reconsideration.

i. <u>As to the Arguments for Reconsideration Raised In the Objection to the R&R.</u>

In the Order, the Court adopted the R&R in its entirety, pursuant to its application of clear error review. ECF 101. Upon review of the case law provided by the Defendant, the Court determines that it applied the incorrect standard of review.

The Federal Magistrates Act, 28 U.S.C. §§ 631–639 (1988), does not allow a magistrate judge to decide a motion for suppression of evidence in a criminal prosecution. *See* 28 U.S.C. § 636(b)(1)(A); *United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 2410, 65 L.Ed.2d 424 (1980). As the Court remains the ultimate decision-maker, it must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, "[t]his de novo review neither requires the district court to 'rehear the contested testimony' nor 'conduct a new hearing on contested issues.'" *United States v. Houston*, No. 08-CR-457, 2009 WL 2876671, at *1 (E.D.N.Y. Sept. 8, 2009) (quoting *Raddatz*, 447 U.S. at 674–75). Rather, the Court "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.'" *United States v. Rosa*, 11 F.3d 315, 328 (2d Cir.1993) (quoting 28 U.S.C. § 636(b)(1)).

"Normally, the judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate." *Raddatz*, 447 U.S. at 675. The statute nonetheless "permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, chose[s] to place on the magistrate's proposed findings and recommendations." *Id.* at 676. As a result, the Court may "afford a degree of deference to the Magistrate Judge's Report and Recommendations." *United States v. RW Prof'l Leasing Servs. Corp.*, 384 F. Supp. 2d 566, 569–

70 (E.D.N.Y. 2005); *United States v. Lake*, 244 F. Supp. 2d 104, 106 (E.D.N.Y. 2003); *United States v. Zuckerman*, 88 F. Supp. 2d 9, 11–12 (E.D.N.Y. 2000)

The Court therefore agrees with the Defendant that it "has the authority to conduct a hearing and listen to the testimony to resolve" the conflicting credibility claims regarding the testimony of officers Torres and Evans. ECF 131-1 at ¶ 61. The Court, however, disagrees that such a hearing is necessary or that Judge Shields erred. The Court concurs with Judge Shields's decision to "credit[] the testimony of Torres and Evans with respect to the existence of a safekeeping policy, and its relation to their duties." ECF 91 at 10. Judge Shields noted the objections raised by the Defendant and found:

> Despite the lack of clear and consistent record-keeping, the witness testimony in this case established that Torres and Evans properly acted pursuant to policy, and in Robinson's interest when deciding to take his cell phone. They were motivated by nothing more than the desire to ensure that Robinson would have quick access to his cell phone, and all of the information contained therein upon his release.

*Id.* at 13. Judge Shields emphasized that "there was no evidence that Parole takes cell phones into safekeeping to further any criminal investigation" and that "[n]either witness searched the content of Robinson's cell phone." *Id.* The Court agrees with the R&R that the potential vagaries and inconsistencies in the witnesses's testimony do not disprove the existence of the safekeeping policy, or that such safekeeping was reasonably and rationally related to furthering the caseworker duties of parole officers.

Therefore, "this Court, in making its *de novo* determination, has no doubts concerning Judge [Shields's] credibility findings and thus need not conduct a hearing." *United States v. Burke*, No. 09-CR-135, 2011 WL 2609837, at *6 (E.D.N.Y. July 1, 2011).

ii.   <u>As to the Allegations Raised in the Defendant Affidavit's.</u>

The Defendant provides a number of additional bases for suppressing the evidence seized from the Parole Cellphone, namely, that: (1) his cellphone was not recovered by parole officers on or near his person as it was "under the baseboard heating unit"; (2) Officer Evans never visited his residence and never called his cellphone; (3) local police left before parole officers rather than vice-versa; and (4) the parole officers were there for a "dual purpose" to aid law enforcement in the criminal investigation. ECF131-1 ¶¶ 65–69. The Defendant raised these allegations for the first time in his motion to reopen the hearing. As a result, they cannot serve as a basis for reconsideration of the February 17, 2108 order.

Local Rule 49.1 only permits reconsideration of orders based on matters "overlooked" by the Court during its original consideration of the motion. *United States v. Wilson*, 920 F. Supp. 2d 287, 292 (E.D.N.Y. 2012); *see also Shrader*, 70 F.3d at 257 ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked. . . ."). Consequently, courts generally deny motions for reconsideration based on "new matters which were never put before the Court during the initial motion." *United States v. Baldeo*, No. 13-CR-125, 2015 WL 252414, at *1–2 (S.D.N.Y. Jan. 20, 2015); *see also Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008) (ruling new facts contained in an affidavit attached to a reconsideration motion cannot be "facts that the court 'overlooked'").

Here, the new allegations in the August 16, 2018 affidavit present no facts "overlooked" by the Court. In support of his initial motion to suppress the evidence seized from the Parole Cellphone, the Defendant received an opportunity to put forward evidence at the evidentiary hearing; cross-examined officers Torres and Evans regarding parole's recovery of his cellphone;

and objected to the findings in the R&R. At each step, he failed to raise these allegations. The Court will not reconsider its ruling, given the extensive opportunities the Defendant already received to be heard regarding his newfound theory.

Regardless, assuming the Court permitted reconsideration on the basis of the Defendant's newly alleged facts, they would not suffice to disturb the findings in the R&R. "[E]ven on a *de novo* review, a district court will generally 'refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.'" *United States v. Watts*, No. 05-cv-5663, 2015 WL 332112, at *1 (E.D.N.Y. Jan. 23, 2015) (quoting *Kennedy v. Adamo*, No. 1:02-cv-1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006); *Haynes v. Quality Markets*, No. 02-cv-250, 2003 WL 23610575, at *3 (E.D.N.Y. Sept. 22, 2003)).

Therefore, the Defendant lacks a persuasive justification for waiting until the eleventh hour to seek suppression on these grounds. It appears that the Defendant contends that his explanation for failing to raise these issues earlier are the failings of his formal counsel. Specifically, he cites a January 22, 2018 e-mail to his former counsel asking him to draft a request to the Court that it "hold off on making a decision on the evidentiary hearing and allow us to submit additional evidence in support of the evidentiary hearing." ECF 144-2. The Court is somewhat sympathetic to this explanation, in light of his November 6, 2017 *pro se* motion alleging that his previous counsel filed the initial motion without his knowledge or consent. ECF 88. However, both the Defendant and his counsel at the time attended the January 8, 2018 hearing, and put forward no evidence despite actual knowledge of the issues being heard. Further, the Court's review of the exhibit cited by the Defendant shows that his request, more likely than not, referred to the filing

of objections to the R&R, not the allegations included in the August 16, 2018 affidavit. *See* ECF 144-2 ("I am in the process of preparing and filing objections to the decision of Judge Shields.").

Thus, the Court denies the Defendant's motion to reopen the suppression hearing regarding the Parole Cellphone.

## C. As to the Motion for Dismissal of the Section 924(c) Charges.

The Defendant moves for dismissal of the 924(c) charges, because he believes that a Hobbs Act Robbery is not a crime of violence under 18 U.S.C. § 924(c)(3)(A). He concedes that the Second Circuit expressly rejected this argument in *United States v. Hill*, 832 F.3d 135, 144 (2d Cir. 2016), *amended*, 890 F.3d 51, 60 (2d Cir. 2018), but notes his disagreement with the holding. As the Court explained in its November 1, 2017 order, *Hill* binds this Court unless and until the Second Circuit or the United States Supreme Court overrules it. ECF 84 at 5.

## III. CONCLUSION

For the foregoing reasons, the Court grants the Defendant's motion for a suppression hearing regarding the evidence seized from the Rental Van and the Roof Cellphone, consistent with the limitations set forth in this opinion. The Court respectfully refers the suppression hearing to Judge Shields for a report and recommendation. The Court denies the Defendant's other motions in their entirety, but reserves final judgment on the Defendant's motions to suppress pending the outcome of the suppression hearings.

Each party is directed to submit a letter brief, not to exceed two pages, regarding what impact, if any, the Court's finding in favor of the validity of the April 15, 2016 New York State warrant would have on the Defendant's motion regarding the warrantless search of the Rental Van. The parties shall file these briefs no later than seven days before the suppression hearing before Judge Shields.

It is **SO ORDERED**:

Dated: Central Islip, New York

November 13, 2018

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge